43 P.3d 760

**In The Matter of The Driver's License Suspension of Brian E. Head.**

**Brian E. HEAD, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 27233.

Supreme Court of Idaho,
Lewiston, October 2001 Term.

Jan. 30, 2002.

Rehearing Denied March 25, 2002.

Siebe Law Office, James E. Siebe, Moscow, for appellant.

Hon. Alan G. Lance, Attorney General; Rebekah A. Cudé, Special Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

## ON REVIEW

EISMANN, Justice.

Brian Head appeals from the decision of the district court affirming the magistrate judge's order that Head's driving privileges shall be suspended for 180 days for his refusal to submit to an evidentiary test for the presence of alcohol in his blood. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

On November 1, 1997, at approximately 2:00 a.m., Deputy King was dispatched to a single-vehicle accident in rural Latah County. When he arrived, several·other police cars were already present, as were emergency medical personnel. They were attending to Brian E. Head, the lone occupant of the vehicle. After Head was transported to a local hospital, Deputy King began assisting in the investigation of the accident. He later went to the hospital to interview Head.

Deputy King had information from other officers investigating the accident indicating that Head had been the driver of the vehicle. While at the hospital, Deputy King telephoned the registered owner of the vehicle, who was Head's brother. He learned that Head resided in the state of Washington, but had been visiting his brother in Deary and had borrowed the car that evening. Deputy King then interviewed Head in the emergency room.

Head told Deputy King. that after attending a high school football game in Genesee, he drove his brother's car to a bar in Troy where he drank beer until he was too intoxicated to drive. He stated that upon walking outside to sleep in the car, he met a stranger who needed a ride to Kendrick. He allowed the stranger, whose name he did not know, to drive the car from the bar towards Kendrick, where Head intended to sleep until morning and then drive back to his brother's house in Deary. Head claimed that the stranger was driving when the accident occurred.

Deputy King could smell the odor of an alcoholic beverage on Head's breath. Deputy King asked Head to submit to an evidentiary test for alcohol in his blood and advised him of the information required by Idaho Code § 18–8002(3). Head initially stated that he would submit to a blood test, but when the laboratory technician arrived to draw his blood he changed his mind and said that he wanted to have his attorney present. After Deputy King told him that he was not entitled to have his attorney present, Head stated that he would not submit to the blood test if he could not have his attorney present.

Deputy King then arrested Head for driving while under the influence of alcohol.

Deputy King submitted an affidavit to the court stating that he had probable cause to believe that Head was driving while under the influence of alcohol, that he asked Head to submit to a test for alcohol concentration in his blood after advising Head of the consequences of refusing such test, and that Head refused to submit to the blood test. The affidavit of refusal initiated proceedings to suspend Head's driving privileges for 180 days due to his refusal to submit to the blood test.

Head timely requested a court hearing regarding his refusal to submit to the blood test. At the conclusion of the hearing, the magistrate judge found that Head had failed to prove a sufficient reason for refusing to submit to the blood test. The magistrate ordered that Head's driving privileges be suspended for 180 days. Head appealed to the district court, which affirmed the order of the magistrate judge. His further appeal was initially heard by the Court of Appeals. It held that because the advisory form that Deputy King read to Head included additional erroneous information regarding the consequences of failing the blood test, the advisory form did not meet the requirements of the statute. The Court of Appeals then reversed the district court's decision, which upheld the suspension ordered by the magistrate judge. We granted the State's petition for review.

## II. STANDARD OF REVIEW

 In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court. *Humberger v. Humberger*, 134 Idaho 39, 995 P.2d 809 (2000). Likewise, upon review of a case appealed from a district court's appellate review of a magistrate's decision, this Court makes an independent appellate review of the magistrate's decision, after giving due regard to the district court's ruling. *State v. Clark*, 135 Idaho 255, 16 P.3d 931 (2000). This Court will

defer to the magistrate's findings of fact if supported by substantial and competent evidence, but will exercise free review of the magistrate's conclusions of law. *Id.*

## III. ANALYSIS

■ The advisory form that Deputy King read to Head stated as follows:

1. I have reasonable grounds to believe that you were driving or were in physical control of a motor vehicle while under the influence of alcohol, drugs, or other intoxicating substances.

2. You are required by law to take one or more evidentiary tests to determine the concentration of alcohol or the presence of drugs or other intoxicating substances in your body.

3. You do not have the right to talk to a lawyer before taking any evidentiary tests to determine the alcohol concentration or presence of drugs or other intoxicating substances in your body.

4. If you refuse to take or complete any of my offered tests:

 A. I will seize your driver's license or permit and will give you a temporary permit unless your license or permit has already been suspended. In no instance shall a temporary permit be issued to a driver of a commercial vehicle.

 B. You have a right to submit a written request within (7) days to the Magistrate Court of *LATAH* County for a hearing to explain why you refused to take the test(s).

 C. If you do not request a hearing or if you do not win at the hearing, your license will be suspended with absolutely no driving privileges for 180 days if this is your first refusal: if this is not your first refusal in the last five years, your license will be suspended for one (1) year. This suspension shall be separate from any other suspension ordered by the court.

5. If you take the evidentiary test(s) and the results indicate an alcohol concentration in violation of the provisions of Section 18–8004, Idaho Code, or the presence of drugs or other intoxicating substances:

 A. I will seize your driver's license.

 B. I will issue you a temporary driving permit valid for thirty days from the date of issuance unless your driver's license is already suspended, revoked, canceled, disqualified, expired, or otherwise invalid or issued in another state, in which case no temporary permit will be issued.

 C. You will be served with a *Notice of Suspension* effective in thirty days, suspending your driver's license or privileges. If this is your first failure of an evidentiary test your driver's license or driving privileges will be suspended for ninety (90) days, with absolutely no driving privileges during the first thirty (30) days. You may request restricted driving privileges for the remaining sixty (60) days of the suspension. If this is not your first failure of an evidentiary test within the last five years, your driver's license or driving privileges will be suspended for one (1) year with absolutely no driving privileges of any kind during that period.

 D. You have the right to an administrative hearing on the suspension before a Hearing Officer designated by the Idaho Transportation Department. The request must be made in writing and be received by the Idaho Transportation Department within seven (7) days from the date of service of the *Notice of Suspension.* You also have the right of judicial review of the Hearing Officer's decision. Please refer to the back of your notice for more information.

 After submitting to the evidentiary test(s) you may, when practical, at your own expense, have additional tests made by a person of your own choosing.

Head concedes that paragraphs numbered 1 through 4 accurately advised him of the consequences of refusing the blood test as required by Idaho Code § 18–8002. He argues, however, that his driving privileges

should be not suspended for refusing to submit to the blood test because the information contained in paragraph 5 inaccurately informed him of the consequences of failing the blood test, had he submitted to it.

In 1984 the Idaho legislature enacted Idaho Code § 18–8002 to provide for the suspension of the driving privileges of a motor vehicle operator who refused to submit, at the request of a peace officer, to an evidentiary test for the concentration of alcohol in his blood, urine, or breath. In 1993 the legislature enacted Idaho Code § 18–8002A to provide for the administrative suspension of the driving privileges of a motor vehicle operator who submitted to an evidentiary test if it showed an alcohol concentration in excess of that permitted by law.[1] The information contained in paragraph 5 was intended to comply with Idaho Code § 18–8002A. At the time Head was asked to submit to the evidentiary test, however, Idaho Code § 18–8002A was not being enforced.

In 1995 the legislature suspended the enforcement of the statute because of concerns that the double jeopardy clauses of the federal and state constitutions would preclude a later prosecution for driving while under the influence of alcohol and/or drugs if the defendant's driving privileges had previously been administratively suspended under Idaho Code § 18–8002A. Act approved March 17, 1995, ch. 190, 1995 Idaho Sess. Laws 681. Two years later the legislature extended the suspension of the enforcement of the statute until January 1, 1998. Act approved March 20, 1997, ch. 238, § 2, 1997 Idaho Sess. Laws 689, 696.[2] Thus, when on November 1, 1997, Deputy King read the advisory form to Head, the enforcement of Idaho Code § 18–8002A was still suspended by the legislature.

As a result, Head was incorrectly informed about the consequences of failing the blood test had he submitted to it.

■ A motor vehicle operator, who is facing the suspension of his driving privileges under Idaho Code § 18–8002 for refusing to submit to an evidentiary test for the concentration of alcohol in his blood, urine, or breath, has the burden of showing why his license should not be suspended. *State v. Griffiths*, 113 Idaho 364, 744 P.2d 92 (1987); IDAHO CODE § 18–8002(4)(b) (1997). The grounds upon which an operator may challenge the suspension of his driving privileges are statutory. In *Griffiths*, we listed those grounds as follows:

A driver may prevail by proving any of the following:

(1) that the police officer stopping defendant did so without probable cause;[3]

(2) that defendant was not requested by a police officer[4] to submit to an evidentiary test;

(3) that the requesting police officer did not have "reasonable grounds" or "probable cause" to believe that defendant had been driving or in actual physical control of a motor vehicle while under the influence of alcohol, drugs or of any other intoxicating substances;[5]

(4) that the request violated defendant's civil rights;

(5) that defendant was not advised of the information regarding refusal mandated by I.C. § 18–8002(3);

(6) that defendant did not refuse to submit to the requested evidentiary test; or

---

1. Both statutes also include within their scope testing for the presence of drugs or other intoxicating substances. They also apply to those who either were driving or were in actual physical control of a motor vehicle.

2. During the period that the enforcement of Idaho Code § 18–8002A was suspended, this Court held that the double jeopardy clauses of the federal and state constitutions would not preclude the subsequent criminal prosecution for driving while under the influence of alcohol of a driver whose driving privileges had been administratively suspended pursuant to Idaho Code § 18–

8002A. *State v. Reichenberg*, 128 Idaho 452, 915 P.2d 14 (1996); *State v. Talavera*, 127 Idaho 700, 905 P.2d 633 (1995).

3. In 1992, the statute was amended to change "probable cause" to "legal cause" and to change "police officer" to "peace officer." Act approved April 2, 1992, ch. 133, § 1, 1992 Idaho Sess. Laws 416, 416–18.

4. *See supra* note 3.

5. *See supra* note 3.

(7) that, although defendant refused the requested evidentiary test, he did so with *sufficient cause.*

*State v. Griffiths, supra* at 368, 744 P.2d at 96. Head concedes that his challenge to the suspension of his driving privileges does not fit within any of the grounds listed in *Griffiths.*[6] Rather, he asks this Court to expand the grounds listed in *Griffiths* to include this situation. Because the grounds for challenging the suspension are statutory, we cannot do so.

The magistrate judge found that Head refused to submit to the blood test because he would not do so without his attorney being present. That finding is supported by substantial and competent evidence. As Deputy King told Head, he had no right to consult with an attorney prior to submitting to the blood test. *Mills v. Bridges,* 93 Idaho 679, 471 P.2d 66 (1970); *McNeely v. State,* 119 Idaho 182, 804 P.2d 911 (Ct.App.1991); IDAHO CODE § 18–8002(2) (1997). Therefore, the magistrate judge did not err when it ordered that Head's driving privileges be suspended for 180 days.

## III. CONCLUSION

After being correctly informed of the consequences of refusing to submit to an evidentiary test for the presence of alcohol in his blood, Head refused to submit to the test because he wanted his attorney to be present. He had no right to have counsel present, or to consult with counsel, prior to or at the time of the blood test. Therefore, the magistrate judge correctly found that Head had failed to show sufficient cause why his driving privileges should not be suspended. The order of the magistrate judge suspending Head's driving privileges for 180 days is affirmed. Costs on appeal are awarded to the State.

Chief Justice TROUT, and Justices SCHROEDER and WALTERS concur.

Justice KIDWELL, dissenting.

Because acquiescence in the practice of providing wholly inaccurate legal information to a motorist suspected of driving under the influence of intoxicants is unjust and conveys an inappropriate message to law enforcement, I respectfully dissent.

As noted by the majority, this Court, in *Griffiths,* listed specific statutory grounds upon which a defendant may challenge the suspension of his or her driving privileges, one of them being "that defendant was not advised of the information regarding refusal mandated by I.C. § 18–8002(3)." *State v. Griffiths (In re Griffiths),* 113 Idaho 364, 368, 744 P.2d 92, 96 (1987). However, the *Griffiths* Court also summarized the underlying principle guiding the determination of whether a motorist has demonstrated that any of those grounds exists, saying that the motorist must "establish cause of a sufficient magnitude that it may be fairly said that a suspension of his license would be unjust or inequitable." *Id.* at 372, 744 P.2d at 100. More specifically, this Court said that "[t]he license of a driver who refuses to submit to a requested test will be reinstated if he can establish at the show cause hearing that he was not *completely* advised of his rights and duties under the statute." *Id.* at 370, 744 P.2d at 98 (emphasis added). The Court said that the motorist's initial refusal in that case could not be the basis for a license suspension, because the law enforcement officer had failed to inform the motorist that he had the right to request additional blood alcohol tests at his own expense. *Id.* Only after the motorist was subsequently completely informed pursuant to I.C. § 18–8002 and refused a second time, could his refusal form the basis of a suspension. *Id.*

The Court of Appeals has picked up on that line of reasoning, interpreting the *Griffiths* case to stand for the proposition that "Idaho law requires *strict* adherence to the statutory language of I.C. § 18–8002(3)." *Virgil v. State (In re Virgil),* 126 Idaho 946,

---

**6.** For example, Head did not allege that being incorrectly informed of the consequences of failing the blood test constituted sufficient cause to refuse the test. Indeed, it would have been difficult for him to argue that he chose a 180 day, absolute suspension of his driving privileges by refusing the blood test in order to avoid, if he failed the test, a possible 90 day suspension, with restricted driving privileges after 30 days.

947, 895 P.2d 182, 183 (Ct.App.1995) (emphasis added); *see also Beem v. State (In re Beem)*, 119 Idaho 289, 292, 805 P.2d 495, 498 (Ct.App.1991). In the present case, the Court of Appeals held that the advisory form was invalid and reversed the magistrate's imposition of the license suspension. *In re Head*, 136 Idaho 409, 34 P.3d 1092, 1095 (Ct.App.2000). The court reasoned that *Griffiths, Virgil*, and *Beem* stand for the proposition that the State has the burden of informing the motorist in strict compliance with I.C. § 18–8002. *Id.* The court found that, based on the information provided by the advisory form, Head could have believed that he faced a choice between a civil license suspension for refusing the test on one hand, and a civil license suspension in addition to possible criminal penalties for taking and failing the test on the other hand. *Id.* The court found that the advisory form therefore created a disincentive for Head to take the blood alcohol test. *Id.*

Although not binding on this Court, the reasoning of the Court of Appeals in this case is persuasive. Not only did the advisory form fail to technically and strictly comply with the statutory scheme in place at the time it was read to Head, but it was also misleading and completely incorrect, such that the imposition of a license suspension would be "unjust or inequitable," to use the *Griffiths* language. 113 Idaho at 372, 744 P.2d at 100.

The majority points out that the magistrate judge found that Head had refused the test based upon his desire to consult with an attorney. By emphasizing this point, the majority opinion seems to follow the State's argument that, regardless of whether the advisory form complied with statutory requirements, Head cannot show actual reliance upon or prejudice resulting from the inaccurate form, because he refused based upon the desire to speak with an attorney. However, in *Griffiths*, this Court espoused the rule that a motorist may avoid a suspension by showing that he or she was not completely informed according to the statute, without ever mentioning a requirement that the motorist show actual reliance upon or prejudice resulting from the inaccurate information.

Consequently, Head's administrative license suspension based upon his failure to submit to the blood alcohol concentration test should be vacated.