## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 37322

| | | |
|---|---|---|
| IN THE MATTER OF THE DRIVER'S LICENSE SUSPENSION OF MATILDA K. KLING. | ) ) ) | |
| STATE OF IDAHO, | ) ) | 2010 Opinion No. 83S |
| Plaintiff-Appellant- Cross-Respondent, | ) ) ) | Filed: December 14, 2010 |
| v. | ) ) | Stephen W. Kenyon, Clerk |
| MATILDA K. KLING, | ) ) | SUBSTITUTE OPINION THE COURT'S PRIOR OPINION |
| Defendant-Respondent- Cross-Appellant. | ) ) ) | DATED DECEMBER 10, 2010 IS HEREBY WITHDRAWN |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Blaine County. Hon. Robert J. Elgee, District Judge; Hon. R. Ted Israel, Magistrate.

District court's order affirming magistrate's order denying driver's license suspension, <u>affirmed</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Brian E. Elkins, Ketchum, for respondent.

_____

LANSING, Chief Judge

The State appeals from the district court's appellate decision affirming the magistrate's order declining to suspend the nonresident driver's license of Matilda K. Kling for Kling's refusal to submit to an alcohol concentration test.

### I.

### FACTS AND PROCEDURE

Kling, who held a Washington state driver's license, was arrested for driving under the influence of alcohol in Blaine County. When asked by the officer to perform a breath test for alcohol concentration, Kling refused. The officer did not seize Kling's driver's license at that

1

time as he was directed to do by Idaho Code § 18-8002(4)(a), although, as a result of her refusal of the test, Kling's driving privileges were subject to suspension by a court pursuant to Idaho Code § 18-8002.

Kling sought to prevent suspension of her driving privileges by filing a motion with the magistrate court. She contended that suspension was not warranted because the arresting officer had not accurately and completely advised her of the consequences of test refusal for motorists with nonresident licenses, as mandated by I.C. § 18-8002(3), and because the officer had deprived her of due process by not filing an affidavit with the court attesting to her refusal within seven days of the event. At the ensuing hearing the parties stipulated that before asking Kling to submit to evidentiary testing, the arresting officer had used an advisory form issued by the Idaho Transportation Department (ITD) to inform Kling of the information required by I.C. § 18-8002(3), including the consequences of refusing an alcohol concentration test. A copy of the form was placed in evidence.

Consistent with his prior rulings on the same issues dating back a number of years, the magistrate held that the ITD advisory form utilized by the officer did not conform to the statute with respect to the seizure and suspension of a nonresident driver's license and was ambiguous. The magistrate further held, as he had in prior cases, that although I.C. § 18-8002 does not express a time limit for an officer to file an affidavit attesting to the driver's refusal of an evidentiary test, due process principles require that the affidavit be filed within seven days of the refusal. The magistrate therefore refused to order suspension of Kling's license because the advisory she received did not conform to statutory requirements and because the officer's failure to file the affidavit of refusal within seven days deprived Kling of due process.

The State appealed to the district court, which affirmed. The State now further appeals.

## II.

## ANALYSIS

### A. Officer's Noncompliance with I.C. § 18-8002(3)

We first address the determination by the magistrate and the district court that Kling's driver's license should not be suspended because she was not properly advised of the consequences of refusal of evidentiary testing as required by I.C. § 18-8002(3). The pertinent provisions of I.C. § 18-8002, as in effect at the time in question, stated:

(1) Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol as defined in section 18-8004, Idaho Code, and to have given his consent to evidentiary testing for the presence of drugs or other intoxicating substances, provided that such testing is administered at the request of a peace officer having reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle in violation of the provisions of section 18-8004, Idaho Code, or section 18-8006, Idaho Code.

. . . .

(3) *At the time evidentiary testing for concentration of alcohol, or for the presence of drugs or other intoxicating substances is requested, the person shall be informed that if he refuses to submit to or if he fails to complete, evidentiary testing*:

(a) He is subject to a civil penalty of two hundred fifty dollars ($250) for refusing to take the test;

(b) *His driver's license will be seized by the peace officer and a temporary permit will be issued* . . . .

(c) He has the right to request a hearing within seven (7) days to show cause why he refused to submit to, or complete evidentiary testing;

(d) If he does not request a hearing or does not prevail at the hearing, the court shall sustain the civil penalty and his driver's license will be suspended absolutely for one (1) year if this is his first refusal and two (2) years if this is his second refusal within ten (10) years; and

(e) After submitting to evidentiary testing he may, when practicable, at his own expense, have additional tests made by a person of his own choosing.

(4) *If the motorist refuses to submit to or complete evidentiary testing after the information has been given in accordance with subsection (3) above*:

(a) He shall be fined a civil penalty of two hundred fifty dollars ($250) and *his driver's license or permit shall be seized by the peace officer and forwarded to the court and a temporary permit shall be issued by the peace officer which allows him to operate a motor vehicle until the date of his hearing, if a hearing is requested, but in no event for more than thirty (30) days* . . . ;

(b) A written request may be made within seven (7) calendar days for a hearing before the court . . . . The hearing shall be limited to the question of why the defendant did not submit to, or complete, evidentiary testing, and the burden of proof shall be upon the defendant; the court shall sustain a two hundred fifty dollar ($250) civil penalty immediately and suspend all the defendant's driving privileges immediately for one hundred eighty (180) days for a first refusal and one (1) year for a second refusal within five (5) years unless it finds that the peace officer did not have legal cause to stop and request him to take the test or that the request violated his civil rights;

(c) *If a hearing is not requested by written notice to the court concerned within seven (7) calendar days, upon receipt of a sworn statement by the peace officer of the circumstances of the refusal, the court shall sustain a two hundred fifty dollar ($250) civil penalty and suspend the defendant's driving privileges* for one hundred eighty (180) days for a first refusal and one (1) year for a second

3

refusal within five (5) years, during which time he shall have absolutely no driving privileges of any kind; and

(Emphasis added.)

The advisory form used by the arresting officer here departed from the statutory language in the following way. Instead of informing Kling that if she refused or failed to complete evidentiary testing her driver's license "will be seized by the peace officer and a temporary permit will be issued," as specified in I.C. § 18-8002(3)(b), the advisory form said:

Your Idaho driver's license or permit will be seized if you have it in your possession, and if it is current and valid you will be issued a temporary permit. *Non-resident licenses will not be seized and will be valid in Idaho for thirty (30) days from the service of this notice of suspension unless modified or restricted by the court, provided the license is valid in the issuing state.*[1]

(Emphasis added.) Thus, the advisory form that was read to Kling differentiated between resident driver's licenses and nonresident licenses, while the statute does not.[2] The magistrate and district court held that this departure from the notification required by the statute constituted a fatal noncompliance that precludes the suspension of Kling's Washington driver's license or Idaho driving privileges for her refusal of the breath test.

A similar version of I.C. § 18-8002 was considered by our Supreme Court in *State v. Griffiths*, 113 Idaho 364, 744 P.2d 92 (1987). Construing the statute as a whole, the Court held that a driver challenging a license suspension under this section may prevail by showing any of the following:

(1) that the police officer stopping defendant did so without probable cause;

---

[1] In the proceedings in the magistrate division and district court, and in briefing on this appeal, the State offered no explanation as to why the ITD form does not conform to the provisions of the statute. At oral argument to this Court, counsel for the State represented that the ITD views I.C. § 18-8002, when applied to nonresident licenses, to be inconsistent with other Idaho statutes concerning motor vehicle driver's licenses. However, because no issue of conflict between statutes was raised below or in briefing to this Court, this opinion should not be interpreted as implicitly resolving any such issues.

[2] Notably, the officer also did not comply with I.C. § 18-8002(4)(a), which required him to seize Kling's driver's license, forward it to the court, and issue her a temporary driving permit.

4

(2) that defendant was not requested by a police officer to submit to an evidentiary test;

(3) that the requesting police officer did not have "reasonable grounds" or "probable cause" to believe that defendant had been driving or in actual physical control of a motor vehicle while under the influence of alcohol, drugs or of any other intoxicating substances;

(4) that the request violated defendant's civil rights;

(5) *that defendant was not advised of the information regarding refusal mandated by I.C. § 18-8002(3)*;

(6) that defendant did not refuse to submit to the requested evidentiary test; or

(7) that, although defendant refused the requested evidentiary test, he did so with sufficient cause.

*Id.* at 368, 744 P.2d at 96 (emphasis added). The holding in *Griffith* that a driver facing suspension will prevail at a hearing if the person "was not advised of the information regarding refusal mandated by I.C. § 18-8002(3)," was predicated on the provision in subsection (4) of the statute that authorizes a court to impose a civil penalty and suspend driving privileges only "[i]f the motorist refuses to submit to or complete evidentiary testing after the information has been given in accordance with subsection (3)." Later in the *Griffith* opinion, the Court reasoned that because the officer asking the driver to submit to a blood test had not informed the driver, as the statute mandates, that he could have additional tests conducted at his own expense, "the [driver's] failure to cooperate at this point in time was not technically a 'refusal' within the meaning of the statute." *Id.* at 370, 744 P.2d at 98.[3] Thus, the *Griffiths* Court strictly applied the statutory language concerning the information that must be imparted to the motorist.

Subsequent to *Griffiths*, this Court noted that the information required by I.C. § 18-8002(3) is set forth "in no uncertain terms," and that *Griffiths* "emphatically discountenanced interjection of judicial gloss upon the legislature's license suspension scheme." *In re Beem,* 119 Idaho 289, 291, 292, 805 P.2d 495, 497, 498 (Ct. App. 1991). In *In re Virgil*, 126 Idaho 946, 947, 895 P.2d 182, 183 (Ct. App. 1995), we held that "Idaho law requires strict adherence to the statutory language of I.C. § 18-8002(3)." Thus it appears that I.C. § 18-8002 and the judicial decisions applying it preclude suspension of a driver's license if the officer did not closely

---

[3]  The *Griffiths* Court ultimately held that the motorist was not entitled to relief from suspension on this basis because the officer later "read the standard consent form to defendant which included all of the information required by section 18-8002(3)" and the motorist again refused to submit to an evidentiary test. *Griffiths*, 113 Idaho at 370, 744 P.2d at 98.

comply with the statutory directive concerning the advisory information to be given to motorists when a BAC test is requested. The ITD advisory form used here did not comply with I.C. § 18-8002 with respect to actions that would be taken vis-à-vis a nonresident driver's license if testing were refused.

Although neither party relies upon it, we recognize that a closely-related statute, I.C. § 18-8002A, overlaps I.C. § 18-8002 in large degree, and contains somewhat different provisions concerning the information to be given to a motorist prior to the motorist's decision whether to submit to evidentiary testing. Before enumerating the information to be given to the motorist, I.C. § 18-8002A(2) specifies that the person "shall be informed substantially as follows (but need not be informed verbatim)." This provision calls into question whether the strict compliance seemingly required by I.C. § 18-8002 and interpretive case law has been legislatively overridden. However, in *Halen v. State*, 136 Idaho 829, 834, 41 P.3d 257, 262 (2002), while recognizing the overlap between the two statutes (but stating that the required information was "similar"), our Supreme Court held that "[m]otorists who refuse to submit to requested tests are entitled to have their licenses reinstated if they can establish at the refusal hearing that they were not *completely advised* according to these code sections." (Emphasis added.) Moreover, even if "substantial compliance" with the statutorily prescribed advisory is all that is required of an officer, that standard was not satisfied here. The advisory form used in this case did not substantially comply with the provisions, found in both I.C. § 18-8002 and I.C. § 18-8002A, requiring that the motorist be advised that upon refusal to submit to a BAC test, the driver's license will be seized by the police officer and a temporary permit issued. The advisory given to Kling did not merely use different words to substantially convey the required information; it directly contradicted the statutory directive by affirmatively informing Kling that her nonresident driver's license would *not* be seized by the officer.

The State maintains, however, that even if the advisory information given to Kling did not comply with statutory requirements, her driver's license is nevertheless subject to suspension because Kling has not shown that she was misled by the deficient advisory. That is, she was told that her driver's license would not be seized by the officer, and it was not, so the information given to her accurately described what would happen if she refused testing. Implicit in the State's argument is an assertion that a person facing suspension must show prejudice arising from a deviation from the requirements of Section 18-8002(3) before relief from suspension

6

proceedings may result. The State suggests that a post-*Griffiths* decision of the Idaho Supreme Court, *Head v. State*, 137 Idaho 1, 4-5, 43 P.3d 760, 763-64 (2002), departed from *Griffiths* by imposing such a prejudice requirement. According to the State, *Head* stands for the proposition that "not all inaccuracies in the advisory are fatal to suspension."

We conclude, however, that *Head* is inapposite. In *Head*, the Court held that inaccurate information imparted to a driver concerning sanctions imposed for *failure* of an evidentiary test for alcohol concentration was not a ground for relief from suspension where the driver had *refused* to perform the requested test. The Court held:

> Head concedes that his challenge to the suspension of his driving privileges does not fit within any of the grounds listed in *Griffiths*. Rather, he asks this Court to expand the grounds listed in *Griffiths* to include this situation. Because the grounds for challenging the suspension are statutory, we cannot do so.

*Head*, 137 Idaho at 5, 43 P.3d at 764. Thus, not only does *Head* not depart from *Griffiths*, it reaffirms it by stating that the Court was without authority to add to the grounds for relief authorized by I.C. § 18-8002 as recognized in *Griffiths*. We conclude that coordinate reasoning precludes a court from disregarding a ground for relief from suspension that is mandated by the statute, including an officer's failure to give the driver the statutorily required information on consequences for refusal of evidentiary testing.

Accepting the State's position would allow officers to unilaterally modify the statutorily prescribed procedures so long as the modified procedures are accurately described to the motorist when testing is requested. The statute does not confer such authority upon law enforcement officers. Nor does the statute require that a driver show detrimental reliance or other form of prejudice from an officer's omission of a portion of the required terms of the advisory. While the State, essentially, argues that the procedures of (a) seizing the in-state license and issuing a thirty-day permit and (b) not seizing the out-of-state license but advising that it is only valid for another thirty days, are functionally equivalent, the second procedure is not described in and is inconsistent with the procedure described in the statute. In addition, they may not be functionally equivalent. The actual seizure of an individual's license is more detrimental than not doing so. Also, the out-of-state driver may well not understand what impact, if any, the limitation that the license is valid in Idaho for only thirty days has on its validity outside of Idaho, including in the issuing state. Under these circumstances, an out-of-

7

state driver who does not plan to remain in this State may be substantially more likely than the in-state counterpart to refuse evidentiary testing.[4]

The information provided to Kling did not comport with that required by I.C. § 18-8002(3). The magistrate was therefore correct in declining to suspend Kling's driver's license.

## B. Timeliness of Officer's Affidavit

The magistrate also held that Kling's driver's license should not be suspended because the officer deprived her of due process by failing to file an affidavit attesting to her refusal of evidentiary testing within seven days of the refusal. We conclude that the magistrate court, and the district court on intermediate appeal, were incorrect in this analysis.

The Fourteenth Amendment prohibits the governmental action that deprives an individual of property without due process. The United States Supreme Court has held that licensure to operate a motor vehicle represents a property interest that may not be suspended without due process. *Illinois v. Batchelder*, 463 U.S. 1112, 1116-17 (1983); *Mackey v. Montrym*, 443 U.S. 1, 20 (1979); *Dixon v. Love*, 431 U.S. 105, 112 (1977). Due process ordinarily requires, at a minimum, notice of the contemplated deprivation and a meaningful opportunity to be heard. *McGloon v. Gwynn*, 140 Idaho 727, 729, 100 P.3d 621, 623 (2004); *Rudd v. Rudd*, 105 Idaho 112, 115, 666 P.2d 639, 642 (1983). Due process is "flexible and calls for such procedural protections as the particular situation demands." *Bowler v. Bd. of Trustees, of School Dist. No. 392, Shoshone County, Mullan*, 101 Idaho 537, 542, 617 P.2d 841, 846 (1980).

We begin our analysis by noting that although I.C. § 18-8002(4)(b) requires that a driver request a court hearing in writing within seven days in order to show why a license should not be suspended, the statute does not state a deadline for an officer to file the affidavit of refusal. To the contrary, I.C. § 18-8002(4)(c), as in effect at the time of Kling's hearing, required the officer to file such an affidavit only if the driver had not timely requested a hearing:

---

[4] There may be good reasons, both practical and legal, for a procedure by which the state of Idaho does not seize a license issued by another state. While this has been alluded to, it was not raised below or properly in this appeal. Moreover, while ITD has, apparently, determined that the procedure actually described and employed by the officer in this case is the appropriate procedure for out-of-state licensees, it has not secured an amendment of the controlling statute to provide for the procedure. No authority has been cited, short of amendment, for modification of the statutory procedure and commensurate warnings. It is apparent that amendment of the statute is needed to address the out-of-state license issue.

> If a hearing is not requested by written notice to the court concerned within seven (7) calendar days, upon receipt of a sworn statement by the peace officer of the circumstances of the refusal, the court . . . shall suspend the defendant's driving privileges . . . .

The only purpose of the officer's affidavit of refusal is to obtain judicial suspension of the driver's license if no hearing has been requested. *In re Hanson*, 121 Idaho 507, 511-14, 826 P.2d 468, 472-75 (1992). Contrary to Kling's argument, the filing of an affidavit of refusal is not necessary to enable a driver to challenge the officer's justification for the stop or justification for requesting evidentiary testing. Indeed, nothing in the statute requires that the officer's affidavit of refusal describe the reasons for the stop nor the reasons for the officer's request that the driver submit to tests; it need only set forth "the circumstances of the refusal." I.C. § 18-8002(4)(c). A driver wishing to challenge the basis for the stop or the request for evidentiary testing may gain such information from the police report describing the incident or any probable cause affidavit that may be filed by the officer in related criminal proceedings or by subpoenaing the officer to the evidentiary hearing. The timing of the filing of the officer's affidavit here did not deprive Kling of a meaningful opportunity to oppose the suspension of her driver's license and present supporting evidence.

The magistrate court and the district court on intermediate appeal were concerned that without a deadline for the officer's refusal affidavit, an officer could theoretically wait months or even years to file a refusal affidavit to initiate a license suspension and thereby deprive a driver of due process. We conclude, however, that such a hypothetical risk is not an appropriate basis for a finding of a due process violation in *this case* where no such delay occurred as the officer filed the affidavit ten days after the traffic stop and prior to the hearing that was conducted on Kling's motion.

## C. Attorney Fees

Kling requested an award of attorney fees in the district court, which that court denied. On cross-appeal to this Court, she requests that we reverse the district court's denial and also award her attorney fees for the present appeal pursuant to I.C. § 12-117(1) and I.C. § 12-121. Kling asserts that the State has pursued both appeals frivolously, unreasonably and without foundation. We decline either to reverse the district court in this regard or to award attorney fees to Kling for this appeal because although the State did not prevail at either level, we cannot say that it has acted "without reasonable basis in fact or law" as required for an award under I.C.

§ 12-117 or that its appeals were taken "frivolously, unreasonably or without foundation" as required for an award under I.C. § 12-121.  *See* Idaho Rule of Civil Procedure 54(e)(1).  Indeed, the State correctly asserted on appeal that the magistrate and district court erred in imposing a seven-day time limit for filing of an officer's refusal affidavit under I.C. § 18-8002(4)(a), and its argument concerning the effect of an officer's departure from the advisory terms required by I.C. § 18-8002(3), although not accepted by this Court, was not frivolous or unreasonable.[5]

## III.

## CONCLUSION

Because the officer who requested that Kling submit to evidentiary testing did not comply with the mandates of I.C. § 18-8002(3), Kling's driving privileges were not subject to suspension.  The appellate decision of the district court affirming the magistrate's order dismissing license suspension proceedings is therefore affirmed.  Costs on appeal, but not attorney fees, to respondent.

Judge GRATTON and Judge MELANSON **CONCUR.**

---

[5]  In light of this determination we need not address the State's argument that I.C. § 12-117 is inapplicable because no "state agency" is a party to this litigation.