IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 37553

| | |
|---|---|
| IN THE MATTER OF THE DRIVER'S LICENSE SUSPENSION OF SCOTT T. CUNNINGHAM. | ) ) ) |
| SCOTT THOMAS CUNNINGHAM, | ) ) |
| Petitioner-Appellant, | ) ) |
| v. | ) ) |
| STATE OF IDAHO, | ) ) |
| Respondent. | ) ) ) |

2011 Opinion No. 3

Filed: February 2, 2011

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge. Hon. Thomas Watkins, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate, reversing the magistrate's order reinstating driver's license, reversed.

Dean B. Arnold, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

MELANSON, Judge

Scott Thomas Cunningham appeals from the district court's intermediate appellate decision reversing the magistrate's order reinstating Cunningham's driver's license. For the reasons set forth below, we reverse the district court's decision and vacate the order suspending Cunningham's driver's license.

## I.

### FACTS AND PROCEDURE

Cunningham was arrested on suspicion of driving under the influence of alcohol (DUI). I.C. § 18-8004. The arresting officer transported Cunningham to jail and requested that Cunningham submit to a breath alcohol concentration (BAC) test. The officer provided Cunningham with a notice of suspension form, which advised Cunningham of his rights and the

consequences for choosing to refuse to submit to the BAC test. I.C. § 18-8002. The officer also played Cunningham a recording, which detailed the information contained on the form. After listening to the recording and reviewing the form, Cunningham asked the officer if he had to pay $250 for refusing to submit to the BAC test. The officer responded that he would discuss that with Cunningham later and that he would explain to Cunningham what the law was and what the Idaho courts have said about the consequences for refusing to submit to a BAC test.

Soon thereafter, the officer informed Cunningham that the test was Cunningham's opportunity to prove to the courts that he had not been drinking. The officer also stated that, if Cunningham refused to take the BAC test, his driver's license would be automatically suspended for one year without exception. When Cunningham attempted to ask the officer about requesting a hearing on the license suspension, the officer interrupted him to assert that the BAC test was Cunningham's only opportunity to prove his innocence. The officer also asserted that he specialized in DUI testing and then repeated that, if Cunningham refused to cooperate, he would lose his opportunity to prove his innocence. Cunningham again inquired about the consequences for refusing to submit to BAC testing, to which the officer responded that Cunningham would be charged with DUI, would lose his chance to prove that he was not driving under the influence of alcohol, and would have his license suspended without exception for one year. Cunningham also asked the officer if he could request someone else to perform an independent BAC test. The officer replied that Cunningham could only obtain such a test after he bonded out of jail.

Cunningham refused to submit to the BAC test. The officer confiscated Cunningham's license and issued him a temporary permit. Cunningham requested a hearing within seven days to demonstrate why he refused to submit to testing. At the hearing, the magistrate determined that the officer's statements regarding the license suspension, the independent evidentiary test, and the requirement that Cunningham prove his innocence were incorrect. As a result, the magistrate ordered that Cunningham's driver's license be reinstated. The state appealed to the district court, which reversed the magistrate's order and suspended Cunningham's license. Cunningham appeals.

## II.

## STANDARD OF REVIEW

On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758,

2

760 (2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id.* An abuse of discretion will be found if the magistrate's findings of fact are not supported by substantial evidence or if the magistrate does not correctly apply the law. *Nicholls v. Blaser*, 102 Idaho 559, 561, 633 P.2d 1137, 1139 (1981).

## III.

## ANALYSIS

At his hearing to show cause for refusing to submit to evidentiary testing, Cunningham argued that the officer did not completely advise him of the consequences of a refusal because the officer repeatedly provided incorrect and misleading information. The magistrate held that the information provided in an advisory must be accurate and determined that the officer's incorrect statements rendered the advisory incomplete. On that basis, the magistrate reinstated Cunningham's license. The district court reversed the magistrate's order, holding that the officer's statements, although incorrect, did not negate the proper warnings given to Cunningham via the written and recorded advisory. As such, the district court reversed the magistrate's order and suspended Cunningham's driver's license, holding that Cunningham failed to show sufficient cause for refusing to submit to testing. On appeal, Cunningham argues that the district court's decision was in error and that the magistrate properly determined that the officer's incorrect statements nullified the initial written and recorded advisory.

At the time of Cunningham's show cause hearing, I.C. § 18-8002(3)[1] provided:

> At the time evidentiary testing for concentration of alcohol, or for the presence of drugs or other intoxicating substances is requested, the person shall be informed that if he refuses to submit to or if he fails to complete, evidentiary testing:
> (a) He is subject to a civil penalty of two hundred fifty dollars ($250) for refusing to take the test;
> (b) His driver's license will be seized by the peace officer and a temporary permit will be issued; provided however, that no peace officer shall issue a temporary permit pursuant to this section to a driver whose driver's license or permit has already been and is suspended or revoked because of previous violations, and in no instance shall a temporary permit

---

[1] This section was amended in 2009 after Cunningham's arrest. The amendments made some redesignations and added a new subsection (3)(e), which involves participation in drug court. *See* 2009 Idaho Sess. Laws, ch. 184, § 1.

3

be issued to a driver of a commercial vehicle who refuses to submit to or fails to complete an evidentiary test;

(c) He has the right to request a hearing within seven (7) days to show cause why he refused to submit to, or complete evidentiary testing;

(d) If he does not request a hearing or does not prevail at the hearing, the court shall sustain the civil penalty and his driver's license will be suspended absolutely for one (1) year if this is his first refusal and two (2) years if this is his second refusal within ten (10) years; and

(e) After submitting to evidentiary testing he may, when practicable, at his own expense, have additional tests made by a person of his own choosing.

Construing I.C. § 18-8002 as a whole, the Idaho Supreme Court in *In re Griffiths*, 113 Idaho 364, 744 P.2d 92 (1987) held that a driver challenging a license suspension under this section may prevail by showing any of the following:

(1) that the police officer stopping defendant did so without probable cause;

(2) that defendant was not requested by a police officer to submit to an evidentiary test;

(3) that the requesting police officer did not have "reasonable grounds" or "probable cause" to believe that defendant had been driving or in actual physical control of a motor vehicle while under the influence of alcohol, drugs or of any other intoxicating substances;

(4) that the request violated defendant's civil rights;

(5) that defendant was not advised of the information regarding refusal mandated by I.C. § 18-8002(3);

(6) that defendant did not refuse to submit to the requested evidentiary test; or

(7) that, although defendant refused the requested evidentiary test, he did so with sufficient cause.

*Id.* at 368, 744 P.2d at 96 (footnote omitted). The Court held that, in order to meet the fifth ground for reinstatement under *Griffiths*, a driver who has refused testing must demonstrate at the show cause hearing that he or she was not *completely* informed of his or her rights and duties under I.C. § 18-8002(3). *Id.* at 370, 744 P.2d at 98. In that case, the driver initially declined to submit to testing, but the Court held that Griffiths' failure to cooperate was not a refusal for

4

purposes of the statute because the officer had failed to inform Griffiths of his right to additional evidentiary testing as mandated by I.C. 18-8002(3). *Griffiths,* at 370, 744 P.2d at 98.[2]

Subsequent to *Griffiths*, this Court noted that the information required by I.C. § 18-8002(3) is set forth in no uncertain terms. *In re Beem,* 119 Idaho 289, 291, 805 P.2d 495, 497 (Ct. App. 1991). In addition, the Idaho Supreme Court has emphatically discountenanced interjection of judicial gloss upon the legislature's license suspension scheme. *In re Brinks*, 117 Idaho 55, 56, 785 P.2d 620, 621 (1990); *Beem*, at 292, 805 P.2d at 498. In *Beem*, the Court affirmed the reinstatement of a driver's license when the officer incorrectly informed the driver that his license could be suspended for 120 days for refusal to submit to testing, instead of the statutory 180 days. *Beem*, at 292, 805 P.2d at 498. In a later case, this Court further held that Idaho law requires strict adherence to the statutory language of I.C. § 18-8002(3). *In re Virgil*, 126 Idaho 946, 947, 895 P.2d 182, 183 (Ct. App. 1995). This Court again affirmed the reinstatement of a driver's license when the advisory incorrectly stated that the driver would be required to "explain why" he had refused an evidentiary test, when the statute required that the driver was required to "show cause" for his refusal. *Virgil*, 126 Idaho at 948, 895 P.2d at 184. Thus, it appears that I.C. § 18-8002 and the judicial decisions applying it preclude suspension of a driver's license if the officer did not strictly comply with the statutory directive concerning the advisory information to be given to motorists when a BAC test is requested.

Cunningham concedes on appeal that the information contained in the written advisory form and the recording provided by the officer was correct. However, Cunningham contends that the officer's inaccurate statements satisfied the fifth ground for refusal under *Griffiths* because the statements nullified the correct information provided by the written and recorded advisory. In other words, Cunningham contends that, due to the inaccurate statements provided by the officer, he was not *completely* informed of his rights and duties under I.C. § 18-8002(3).

In support of this argument, Cunningham relies on cases in other jurisdictions. In *Forman v. Motor Vehicle Admin*., 630 A.2d 753 (Md. 1993), a driver arrested for DUI was

---

[2]     After Griffiths was later informed of his rights under the statute and still refused to submit to evidentiary testing, the Court held that Griffiths was properly informed and affirmed Griffiths' license suspension. *Griffiths*, 113 Idaho at 370, 744 P.2d at 98. In essence, the Court determined that, because the officer later completely informed Griffiths of his rights under the statute, the initial incorrect advisory was cured.

initially given a proper advisory of her rights should she refuse to submit to evidentiary testing. However, while transporting Forman to jail, the arresting officer provided incorrect information regarding the consequences for refusal. The Maryland Court of Appeals determined that Maryland's implied consent statute requires a driver to be fully advised of the consequences for failing to submit to evidentiary testing. *Id.* at 762. Specifically, the Court held that an officer giving the advisory must take care not to subsequently confuse or mislead the driver as to his or her rights under the statute. *Id.*

Similarly, in *Gargano v. New York State Dep't of Motor Vehicles*, 500 N.Y.S.2d 346, 346-47 (N.Y. App. Div. 1986), the court held that an officer's incorrect statements regarding the length of a driver's license suspension violated the requirement that a driver be warned "in clear or unequivocal language" of the consequences for refusal. In *Gargano*, the driver was initially provided proper warnings under New York law. However, the Court reversed Gargano's license suspension due to the officer's subsequent incorrect statements. *Id. See also Mairs v. Dep't of Licensing*, 854 P.2d 665, 668-69 (Wash. Ct. App. 1993) (incorrect warnings deprived driver of the opportunity to make a knowing and intelligent decision whether to take or refuse an evidentiary test).

The state responds that Cunningham was completely informed of his rights under the statute because he was given the advisory form and listened to a recorded version of the advisory prior to his refusal. In addition, the state contends that, because the officer's statements were consistent with the statutory requirements of I.C. § 18-8002(3), Cunningham has failed to demonstrate that he satisfied the fifth ground for reinstatement under *Griffiths*.

The officer in this case provided a written advisory form and played a recording for Cunningham, which conveyed the information required under the statute. However, in response to Cunningham's questions regarding the consequences of refusing testing, the officer repeatedly asserted that, if Cunningham refused to cooperate, he would lose his driver's license for one year, without exception. In addition, in response to Cunningham's question regarding whether he could obtain an additional evidentiary test, the officer stated that Cunningham had to wait until he bonded out of jail to obtain such a test. Finally, the officer reiterated that, if Cunningham refused to cooperate, he would lose his chance to prove his innocence. Based on the recording of this exchange and the officer's testimony at the hearing, the magistrate

6

determined that the officer conveyed incorrect information regarding Cunningham's rights and duties should he refuse to submit to evidentiary testing.

On appeal, the state disputes these findings of fact, arguing that the officer's statements were consistent with the warnings required by I.C. § 18-8002(3). First, the state contends that the officer's statements regarding the automatic suspension were consistent with the statute because Cunningham had previously been warned in writing and via a recording that he had the opportunity to request a hearing within seven days after refusing to submit to testing. The state argues that the officer never specifically told Cunningham that he was not entitled to a hearing after losing his license. Nevertheless, the officer repeatedly asserted that, if Cunningham refused to submit to testing, he would *automatically* lose his driver's license without exception. These repeated statements contradict the advisory mandated by I.C. § 18-8002(3) because the statute did not indicate that a driver would *automatically* lose his or her driving privileges should the driver refuse to submit to testing. Rather, the statute provided that, upon refusal, a driver would have his or her license *seized* by the officer, would be issued a temporary permit, and would have the opportunity to have the license reinstated at a hearing if the driver requested such a hearing within seven days of the refusal. The officer's repeated statements implied that Cunningham would not have the option to contest his suspension, which is not consistent with the warnings required by I.C. § 18-8002(3).

The state also argues that the officer's comment that Cunningham must bond out of jail in order to obtain an additional BAC test was not incorrect because Cunningham's inquiry was about submitting to an independent evidentiary test *instead* of submitting to the BAC test at the jail. The recording of Cunningham's encounter with the officer reveals that, just prior to Cunningham's question about additional testing, the officer informed Cunningham that he could obtain such testing only after submitting to the BAC test. It appears that Cunningham's inquiry referred to the information listed on the advisory form, which stated that, *if a person submitted to testing*, he or she could request an independent evidentiary test.

Finally, the state contends that, when the officer repeatedly told Cunningham that the BAC test was his only opportunity to prove his innocence, the officer was correctly stating that passing the evidentiary test would demonstrate that Cunningham should not be arrested for DUI. However, it appears from the record that the officer continuously reiterated that the BAC test was Cunningham's only opportunity to "prove his innocence." More importantly, once

7

Cunningham indicated that he did not want to submit to testing, the officer asked Cunningham what he would like the officer to write down for the judge on the refusal form. The officer also requested that Cunningham explain why he did not want to prove that he was innocent and why he failed the field sobriety tests, not explain his or her failure to submit to testing. Such statements suggest that Cunningham was required to explain to the judge at his show cause hearing why he was not guilty of DUI.[3] On the contrary, the statute provided that a driver who requested a hearing was required to demonstrate why he or she refused to submit to evidentiary testing. Based on the foregoing, we conclude that substantial and competent evidence supports the magistrate's findings that the officer's statements were incorrect.

As noted, the state contends that, since the complete advisory was presented to Cunningham, the fifth ground for refusal under *Griffiths* was inapposite. Instead, the state asserts that only the seventh ground for refusal under *Griffiths* may be applied under this circumstance. The state argues that, in order to demonstrate sufficient cause for refusal under the seventh ground in *Griffiths*, Cunningham must show that the refusal was actually caused by the officer's action. Thus, the state contends that only incorrect statements directly leading to a refusal amount to sufficient cause for reinstatement under *Griffiths*. In support of this argument, the state relies upon *Head v. State*, 137 Idaho 1, 43 P.3d 760 (2002). In *Head*, the officer correctly informed the driver of the consequences for refusing to submit to evidentiary testing. However, the officer provided incorrect information regarding the consequences for failing an evidentiary test. The Idaho Supreme Court held that inaccurate information conveyed to a driver concerning sanctions imposed for *failure* of an evidentiary test for alcohol concentration was not a ground for relief from suspension under *Griffiths* where the driver had *refused* to perform the requested test. The Court held:

> Head concedes that his challenge to the suspension of his driving privileges does not fit within any of the grounds listed in *Griffiths*. Rather, he asks this Court to expand the grounds listed in *Griffiths* to include this situation. Because the grounds for challenging the suspension are statutory, we cannot do so.

---

[3] We recognize that a single statement by the officer that submitting to testing would allow a driver to prove his or her innocence does not necessarily contradict the language of the advisory under the statute. However, an officer's repeated assertions that a driver is required to prove his innocence to the judge or explain why he failed field sobriety tests rises to the level of contradicting the language of the statute.

8

*Head*, 137 Idaho at 5, 43 P.3d at 764 (footnote omitted). In a footnote, the Court also determined that it would be difficult for the driver to argue that his refusal was caused by the incorrect information contained in the advisory. *Head*, 137 Idaho at 5 n.6, 43 P.3d at 764 n.6. The state interprets this statement to stand for the proposition that an incorrect advisory must cause the driver to refuse testing in order to provide a sufficient ground--the seventh ground--under *Griffiths* for reinstatement.

Our recent decision in *Kling v. State*, ___ Idaho ___, ___ P.3d ___ (Ct. App. 2010) directly addressed this argument. In *Kling*, the state conceded that the information contained in the advisory form provided to the driver was incorrect. However, the state, relying on *Head*, asserted that, because the driver did not rely upon the incorrect information when deciding to refuse to submit to testing, the driver could not establish a ground for refusal under *Griffiths*. *Kling*, ___ Idaho at ___, ___ P.3d at ___. This Court held that *Head* was inapposite, concluding:

> Thus, not only does *Head* not depart from *Griffiths*, it reaffirms it by stating that the Court was without authority to add to the grounds for relief authorized by I.C. § 18-8002 as recognized in *Griffiths*. We conclude that coordinate reasoning precludes a court from disregarding a ground for relief from suspension that is mandated by the statute, including an officer's failure to give the driver the statutorily required information on consequences for refusal of evidentiary testing.
> Accepting the State's position would allow officers to unilaterally modify the statutorily prescribed procedures so long as the modified procedures are accurately described to the motorist when testing is requested. The statute does not confer such authority upon law enforcement officers. Nor does the statute require that a driver show detrimental reliance or other form of prejudice from an officer's omission of a portion of the required terms of the advisory.

This Court's reasoning in *Kling* is dispositive of the state's argument in this case. *Kling*, like its predecessors *Virgil*, *Beem*, and *Griffiths*, held that contradictory information provided in an advisory renders that advisory incomplete. A claim that the advisory was incomplete under the fifth ground in *Griffiths* does not require that a driver establish detrimental reliance on an officer's repeated incorrect recitation of the required terms of the advisory. As a result, we will not disregard a ground for relief from suspension that is mandated by the statute, including an officer's failure to completely advise a driver of the consequences for refusal of evidentiary testing.

9

Based on the specific facts of this case, we conclude that the information provided to Cunningham did not comport with that required by I.C. § 18-8002(3) and, therefore, rendered the written and recorded advisory given to Cunningham incomplete. As mentioned above, the officer incorrectly asserted that Cunningham would immediately lose his license should he refuse to submit to testing, that he could only obtain additional evidentiary testing after bonding out of jail, and that he must prove his innocence to the judge at the show cause hearing. The officer conveyed such incorrect information after notifying Cunningham that he "specialized" in DUI testing and that he instructed officers on how to properly administer field sobriety tests. In addition, before answering any of Cunningham's questions, the officer stated that he would explain what the Idaho Code required and what Idaho courts have said about the consequences of a refusal. The officer was adamant that the information he conveyed to Cunningham was the law, even if such information contradicted what was previously contained in the written and recorded advisory. The officer's continuous, repetitive recitation of incorrect information regarding the consequences for refusal rendered the initial advisory incomplete.

We do not intend the holding of this case to require officers to stand mute when answering a driver's questions regarding the information contained in the implied consent advisory. However, the officer's conduct in this case so contradicted the information provided in the initial advisory that it defeated the purpose of the statute's requirement for such an advisory in the first place. Here, the officer's repeated assertions went beyond mild misstatements or passing inaccuracies, which may occur during an advisory involving a presumably intoxicated driver. The magistrate was therefore correct in declining to suspend Cunningham's driver's license. Thus, we reverse the district court's decision and vacate the suspension of Cunningham's license.

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate's finding that the officer conveyed incorrect information to Cunningham prior to his refusal to submit to evidentiary testing. In addition, the magistrate correctly applied the law when it determined that Cunningham was not properly advised as mandated by I.C. § 18-8002(3). Accordingly, we reverse the district court's intermediate appellate decision and vacate the order suspending

10

Cunningham's driver's license. Costs, but not attorney fees, are awarded on appeal to Cunningham.

Chief Judge GRATTON and Judge GUTIERREZ, **CONCUR.**