No. 103,028

STATE OF KANSAS, *Appellee*, v. BRUNO EDGAR, *Appellant*.
(294 P.3d 251)

Opinion filed February 1, 2013.

*Joanna Labastida*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*James R. Spring*, deputy county attorney, argued the cause, and *Steve Six*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: On petition for review from the district court's denial of a suppression motion, this case presents two questions affecting investigations for driving under the influence of alcohol (DUI). The first is whether a driver's favorable results from field sobriety tests administered prior to a request for a preliminary breath test (PBT) dissipate the reasonable suspicion statutorily required to support a request for a PBT. The second is whether the investigating officer in this case substantially complied with K.S.A. 2010 Supp. 8-1012(c), which requires oral notice that refusal to take a PBT is a traffic infraction, when the officer incorrectly told the suspect he had no right to refuse.

We hold that field sobriety tests administered prior to a PBT request are part of the totality of circumstances examined by a court when determining whether there was reasonable suspicion to support the PBT request under K.S.A. 2010 Supp. 8-1012(b). We hold further that the officer in this case failed to comply with the notice requirements in K.S.A. 2010 Supp. 8-1012(c) by incorrectly informing the suspect he had no right to refuse the PBT. We reverse the Court of Appeals on the notice issue. We reverse and remand to the district court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Bruno Edgar was charged with DUI in violation of K.S.A. 8-1567 (fourth or subsequent violation) and driving while his license

was suspended or revoked in violation of K.S.A. 8-262 (third or subsequent violation). The undisputed facts underlying these charges were presented at a preliminary hearing, in which the arresting officer testified as follows:

On July 29, 2007, a police officer was working a driver's license check lane, where every car driving through was stopped. Around 12:45 a.m., the officer saw Edgar pull up to the check lane in a white Dodge pickup. The officer said Edgar acted confused when asked for his information and told the officer he did not have a driver's license. The officer waved Edgar onto the shoulder because there was traffic behind him.

When the officer again asked Edgar for his driver's license, Edgar presented an identification card. The officer asked again if Edgar had a regular driver's license, and Edgar replied yes. The officer said he took Edgar's identification card and ran it through dispatch, which advised that Edgar's driver's license was suspended.

The officer testified that during his conversation with Edgar, he could smell a "real light smell of alcoholic beverage" coming from Edgar's truck. The officer asked Edgar if he had consumed any alcohol, and Edgar said "just beer" but did not say how much. The officer decided Edgar needed to undergo sobriety testing and had Edgar initially perform the following tests:

1. Horizontal gaze nystagmus test. The officer said this test showed a 45-degree nystagmus with no maximum deviation present and no vertical deviation.

2. Nine-step walk and turn. The officer testified that Edgar said he understood the instructions, but that the officer did not believe Edgar actually understood them because he seemed "a little confused" and remained in the same position. The officer explained the test to Edgar again, after which Edgar correctly followed instructions. During the test, the officer said Edgar "did fine," except that during the second set of nine steps, Edgar was not walking heel to toe on the fourth and fifth steps.

3. One-leg stand. Edgar said he understood the instructions, and the officer said Edgar passed the test.

The final test the officer administered was a PBT because, he said, it was part of his agency's standard procedures. The officer testified the PBT tells him whether he wants to continue investigating and that he would have asked for a PBT even if he did not believe Edgar was impaired after the field sobriety tests. The PBT administered in this case required a sample of deep lung air that may be extracted only after a person forcibly blows air into the PBT device for a period of 3 to 5 seconds. The breath sample is then chemically analyzed.

The officer said he advised Edgar that he did not have a right to refuse the PBT, did not have a right to consult an attorney about taking the test, and could be subject to further testing. After those instructions, Edgar agreed to take a PBT, which showed a .122 blood-alcohol content level. Edgar was arrested for DUI and driving on a suspended driver's license. Importantly, the officer said he would not have arrested Edgar if it were not for the PBT results. Edgar later submitted to a blood test, which showed a blood alcohol level of 1.1 grams per 100 milliliters of blood.

At the conclusion of evidence at the preliminary hearing, the district court found probable cause to believe Edgar committed felonious driving under the influence of alcohol and bound him over for trial.

Following the preliminary hearing, Edgar filed the motion to suppress at issue in this appeal. He argued the purpose of the initial stop—to check for a driver's license—had been completed when dispatch advised Edgar's license was suspended and that further seizure of Edgar for DUI investigation required probable cause and consent. Edgar alternatively argued that he was not properly advised of his rights before the PBT was administered and that the officer did not have probable cause or consent to administer the test. The motion to suppress argued:

"7. The Defendant asserts that the purpose of the initial stop to check his driver's license had been completed when dispatch returned the license status as being suspended. The further seizure of Mr. Edgar lacked the requisite probable cause and consent. Alternatively, the Defendant contests that he not was properly advised of his rights before the [PBT] was administered, and that the officer did

not have probable cause or consent to administer the [PBT] and that the officer's reliance on the [PBT] in seeking the subsequent blood test invalidates it."

The State did not file a response.

At the hearing on the motion to suppress, the district court heard no additional arguments from counsel. It revisited the facts presented at the preliminary hearing. It held that absent the PBT results there was no probable cause to place Edgar under arrest or ask him to take an alcohol test because there was no evidence of bad driving and because Edgar had passed three earlier sobriety tests. The only evidence of intoxication, the district court found, was an odor of alcohol.

The district court ultimately denied Edgar's motion. It found the officer was not required to revisit his reasonable suspicion after each sobriety test. The district court explained that it found no caselaw on point but believed if the officer had reasonable suspicion to begin field sobriety testing in the first place, he also had suspicion to run the gamut of testing, particularly because each person tolerates alcohol differently and might pass the one-leg-stand test, but not the PBT. It also noted PBT administration could occur either before or after other testing.

The district court primarily relied on this court's decision in *State v. Pollman*, 286 Kan. 881, 190 P.3d 234 (2008), which held that an investigation for obstruction together with the smell and admission of alcohol consumption created reasonable articulable suspicion to pursue a DUI investigation. The district court found there was reasonable articulable suspicion to justify the officer's request for a PBT based on Edgar operating his car on a suspended license, his admission to drinking, and the odor of alcohol on his person.

As to the argument that Edgar did not properly consent to the PBT because the officer told him he had no right to refuse, the district court agreed that the officer did not provide the correct notice under the PBT statute, K.S.A. 2010 Supp. 8-1012. But it held there was no error justifying suppression because the statute provided implied consent in subsection (a) and stated in subsection (c) that failure to provide notice is not a defense.

The parties stipulated to the facts, and at a bench trial the district court convicted Edgar of DUI. The State and Edgar agreed to

dismiss the driving while suspended charge. Edgar was sentenced to 8 months in jail, with 12 months' postrelease supervision. He filed a timely notice of appeal.

*Court of Appeals Decision*

The Court of Appeals upheld the district court's denial of the motion to suppress. *State v. Edgar*, 45 Kan. App. 2d 340, 246 P.3d 1013 (2011). It noted the State's arguments that there was nothing precluding the officer from beginning his investigation with the PBT before the sobriety tests and that the smell of alcohol by itself warranted reasonable suspicion for the officer to request a PBT. But it also noted the State ignored Edgar's underlying argument on appeal: that the officer's initial suspicion dissipated once Edgar passed his field sobriety tests—an issue of first impression in Kansas. 45 Kan. App. 2d at 345.

The panel relied on a Vermont decision, *State v. Mara*, 186 Vt. 389, 987 A.2d 939 (2009), because it found no Kansas caselaw applicable. In *Mara*, the Vermont Supreme Court held that a state trooper could order a PBT immediately after smelling an odor of alcohol on the driver, noticing the driver had bloodshot eyes, and the driver's admission to drinking. Most notably, the Vermont court said that even though the driver had passed two prior sobriety tests, the trooper could still consider the other circumstances itemized above. It held that passing the sobriety tests did not, as a matter of law, compel the trooper to stop the DUI investigation. 186 Vt. at 394-95.

Based on *Mara*, the *Edgar* panel held:

"In conducting a DUI investigation, a law enforcement officer is not required to reweigh reasonable suspicion after each field sobriety test. If reasonable suspicion exists at the outset of an investigation, an officer should be allowed to run the usual array of tests, within a reasonable number, to determine if the officer's reasonable suspicion leads to arrest or release of the person detained." 45 Kan. App. 2d at 346.

It further held that passing one or more field sobriety tests does not necessarily dispel reasonable suspicion if there is other evidence justifying the officer's PBT request. Here, the panel determined that other evidence included: an odor of alcohol, Edgar's

admission to drinking, Edgar's initial confusion when asked for his driver's license, and his missing two steps on the walk-and-turn test. 45 Kan. App. 2d at 347.

As for Edgar's second argument—that his consent to the PBT was involuntary because the officer told him he did not have a right to refuse it—the Court of Appeals noted first that the PBT statute, K.S.A. 2010 Supp. 8-1012(a), states that anyone who drives consents to taking a PBT. And based on this, the panel held that Edgar's consent was not required to be knowing or voluntary because consent was statutorily implied. 45 Kan. App. 2d at 348. It also cited language from K.S.A. 2010 Supp. 8-1012(c) and interpreted it to mean that failure to provide the "proper" notice would not be an issue or defense in any action. 45 Kan. App. 2d at 349.

Edgar sought review from this court, raising two challenges to the panel's decision. He argued the panel erred because (1) the officer lacked a reasonable articulable suspicion to continue to detain Edgar and request the PBT after Edgar passed the three field sobriety tests; and (2) Edgar's consent to the PBT was not voluntary because the officer improperly informed Edgar he had no right to refuse the test. We granted review on both questions. This court's jurisdiction arises under K.S.A. 21-3018 (review of a Court of Appeals decision).

## DISCUSSION

Edgar appeals from the denial of his motion to suppress because the investigating officer lacked a reasonable articulable suspicion to request a PBT and his consent to the PBT was involuntary.

*Standard of Review*

Appellate courts review a district court's decision on a motion to suppress evidence using a bifurcated standard. First, we review the factual findings underlying the trial court's suppression decision by a substantial competent evidence standard. We then review the legal conclusion drawn from those factual findings de novo. Appellate courts do not reweigh evidence. *State v. Sanchez-Loredo*, 294 Kan. 50, 54, 272 P.3d 34 (2012). The facts in this case are undisputed, so we exercise unlimited de novo review of the

district court's legal conclusions. 294 Kan. at 54. We apply this standard to both of Edgar's issues since they challenge the district court's denial of the motion to suppress.

*Reasonable Suspicion Impacted by Successive Field Sobriety Tests*

Edgar first argues that because he passed his initial field sobriety tests, the officer no longer had reasonable suspicion to request that Edgar take a PBT. The State responds that there is no requirement that an officer reweigh reasonable suspicion after each sobriety test or that the PBT must be administered only after field sobriety testing. The Court of Appeals panel agreed with the State. *Edgar*, 45 Kan. App. 2d at 346-47.

In Kansas, it is illegal for a person with a blood- or breath-alcohol concentration of .08 or higher to operate or attempt to operate a vehicle. K.S.A. 8-1567(a)(1). And while investigating whether someone is operating a vehicle over the legal limit, officers may engage drivers suspected of DUI in a series of field sobriety tests, including the walk-and-turn, one-leg stand, and horizontal gaze nystagmus. These tests are designed to assess a variety of skills, including " 'balance, large muscle coordination, cognitive skills, and oculomotor control' " in determining whether a driver is impaired. Rubenzer, *The Standardized Field Sobriety Tests: A Review of Scientific and Legal Issues*, 32 Law & Hum. Behav. 293, 295 (2008). The PBT may be part of this investigative process.

PBT administration is controlled by K.S.A. 2010 Supp. 8-1012, which provided at the time of Edgar's arrest:

"(a) Any person who operates or attempts to operate a vehicle within this state is deemed to have given consent to submit to a preliminary screening test of the person's breath subject to the provisions set out in subsection (b).

"(b) A law enforcement officer may request a person who is operating or attempting to operate a vehicle within this state to submit to a preliminary screening test of the person's breath to determine the alcohol concentration of the person's breath if the officer has reasonable suspicion to believe the person has been operating or attempting to operate a vehicle while under the influence of alcohol or drugs or both alcohol and drugs.

"(c) At the time the test is requested, the person shall be given oral notice that: (1) There is no right to consult with an attorney regarding whether to submit to testing; (2) refusal to submit to testing is a traffic infraction; and (3) further testing may be required after the preliminary screening test. Failure to provide the notice

shall not be an issue or defense in any action. The law enforcement officer then shall request the person to submit to the test.

"(d) Refusal to take and complete the test as requested is a traffic infraction. If the person submits to the test, the results shall be used for the purpose of assisting law enforcement officers in determining whether an arrest should be made and whether to request the tests authorized by K.S.A. 8-1001 and amendments thereto. A law enforcement officer may arrest a person based in whole or in part upon the results of a preliminary screening test. . . . Following the preliminary screening test, additional tests may be requested pursuant to K.S.A. 8-1001 and amendments thereto."

Section (b) is key. It requires an officer to have "reasonable suspicion" the person is operating or attempting to operate a vehicle under the influence before requesting a PBT. Reasonable suspicion is a less demanding standard than probable cause and requires considerably less than a preponderance of the evidence. *Pollman,* 286 Kan. 881, Syl. ¶ 6. Reasonable suspicion has been defined by this court to mean

" 'a particularized and objective basis for suspecting the person stopped is involved in criminal activity. Something more than an unparticularized suspicion or hunch must be articulated. Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Both reasonable suspicion and probable cause are dependent upon the content of information possessed by the detaining authority and the information's degree of reliability. Quantity and quality are considered in the totality of the circumstances—the whole picture that must be taken into account when evaluating whether there is reasonable suspicion.' " *Pollman,* 286 Kan. at 890 (quoting *State v. Toothman,* 267 Kan. 412, Syl. ¶ 5, 985 P.2d 701 [1999]).

Reasonable suspicion is determined by looking at the totality of circumstances as viewed by a reasonable law enforcement officer. 286 Kan. at 890. And as is often repeated:

" ' "[W]e judge the officer's conduct in light of common sense and ordinary human experience. [Citation omitted.] 'Our task . . . is not to pigeonhole each purported fact as either consistent with innocent travel or manifestly suspicious,' [citation omitted], but to determine whether the totality of the circumstances justify the detention. [Citation omitted.] We make our determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, [citation omitted], remembering that reasonable suspicion represents a 'minimum level of objective justification' which is 'considerably less than proof of wrongdoing by a preponderance of the evidence.' " [Citation omitted.]' " *Pollman,* 286 Kan. at 890 (quoting *State v. DeMarco,* 263

Kan. 727, 734-35, 952 P.2d 1276 [1998]) (quoting *United States v. Mendez*, 118 F.3d 1426, 1431 [10th Cir. 1997]).

Using this as the applicable standard necessary for a PBT request, we turn to Edgar's argument on appeal. Edgar does not directly distinguish or address *Mara*, the Vermont case relied upon by the Court of Appeals. But he indirectly downplays it by comparing it to another Court of Appeals decision, *State v. Diaz-Ruiz*, 42 Kan. App. 2d. 325, 211 P.3d 836 (2009). In *Diaz-Ruiz*, an officer stopped a car under the suspicion that a ladder in the back was not secured. The panel found that once the officer approached the car and dispelled that suspicion, he unlawfully extended the scope of the stop by questioning the defendants about their travel plans and asking for identification. 42 Kan. App. 2d at 337.

Edgar uses the *Diaz-Ruiz* case to contend that the officer's initial DUI suspicion was dispelled after Edgar successfully completed three different field sobriety tests, so his request for a PBT unlawfully extended the DUI investigation. But Edgar's reliance on this analogy is misplaced because *Diaz-Ruiz* is about extending the length of the traffic stop after dispelling suspicion almost immediately and on the officer's own accord before making contact with the driver. Edgar's case is distinguishable because the officer became suspicious of Edgar after he began talking to him, so there was not an opportunity to dispel suspicion before making contact. Moreover, the officer here was conducting an investigation under K.S.A. 2010 Supp. 8-1012.

Compare *Mara*, 186 Vt. at 394-96, with *State v. Whitney*, 889 N.E.2d 823, 829 (Ind. App. 2008), in which the Indiana Court of Appeals held PBTs cannot be administered randomly but can be administered based on reasonable suspicion after looking at the totality of circumstances. In *Whitney*, reasonable suspicion existed because the driver was speeding late at night and although the officer could not tell if he was smelling alcohol or the car's leather interior, the court found nothing unreasonable about the officer reversing his usual order of testing by administering a PBT before conducting field sobriety tests. 889 N.E.2d at 829-30; see also *State v. Brandenburg*, 41 Ohio. App. 3d 109, 110-11, 534 N.E.2d 906

(1987) (although defendant performed well on some sobriety testing, totality of circumstances would allow a reasonable person to believe crime had been committed).

The State and Court of Appeals rely heavily on this court's *Pollman* decision in their analysis. *Pollman*, 286 Kan. 881. In that case, Pollman was riding his motorcycle alongside his wife, when his wife was pulled over for failing to signal. The officer told Pollman he was not being stopped and to "move along." 286 Kan. at 883. Pollman refused and stayed nearby, prompting the officer to ask for back-up assistance. Another officer confronted Pollman and smelled alcohol on his breath. Pollman admitted he had been drinking; although the officer did not know how much or when, the officer said Pollman had been "coherent and cooperative." 286 Kan. at 883. The officer said that other than the smell of alcohol, Pollman showed no other indicators signaling that he had been drinking. The smell of alcohol prompted the officer to administer a PBT on Pollman, which returned a positive reading. Afterwards, the officer administered several field sobriety tests, including the walk-and-turn and the one-leg-stand. The officer was "dissatisfied" with Pollman's performance and arrested him. 286 Kan. at 884. A later blood test confirmed that Pollman's alcohol level was over the legal limit.

On appeal, Pollman claimed the officer lacked reasonable suspicion to detain him or probable cause to arrest him for DUI. This court declined to focus on whether the odor of alcohol alone creates reasonable suspicion that Pollman was driving while intoxicated because such a narrow focus would be inappropriate in light of other factors also present, including that Pollman refused to leave the scene when asked, which might indicate impaired judgment because of intoxication, and Pollman's admission to drinking. We noted the smell of alcohol coming from Pollman to be significant, even if it was not strong, because this would go to the weight of the evidence. But we held the totality of the circumstances did not erase reasonable suspicion. 286 Kan. at 894-97; see also *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 513-15, 242 P.3d 1179 (2010) (probable cause existed to request an evidentiary breath test even though driver performed some things correctly during some

of the field sobriety tests; positive facts did not negate the others in determining whether the trooper should have requested the PBT or other evidentiary breath test).

A number of other Kansas cases similarly hold that competing evidence of sobriety does not negate initial evidence of intoxication. See, *e.g., Hansen v. Kansas Dept. of Revenue,* No. 106,752, WL 3136517, at *2-3 (Kan. App. 2012) (unpublished opinion) (perfect performance on sobriety testing did not negate presence of other factors including alcohol odor, bloodshot eyes, admission to drinking); *Dorzweiler v. Kansas Dept. of Revenue,* No. 104,170, 2011 WL 1197206, at *2 (Kan. App. 2011) (unpublished opinion) (adequate performance on field sobriety testing did not dispel reasonable suspicion of DUI when driver was speeding, had slow reaction to emergency lights, strong odor of alcohol, bloodshot eyes, was crying, and had antagonistic behavior); *State v. Anderson,* No. 93,083, 2006 WL 265227, at *2 (Kan. App. 2006) (unpublished opinion) (officer had reasonable suspicion to require field sobriety testing outside the car even though the driver performed well on tests while sitting down); *cf. State v. Bojorquez,* No. 105,019, 2011 WL 4357848, at *5-6 (Kan. App. 2011) (unpublished opinion) (driver's performance on sobriety testing was not great, but still did not "substantially dissipate" officer's suspicion in light of other factors including alcoholic odor and admission to drinking), *rev. denied* 294 Kan. 944 (2012).

The crux of Edgar's argument is that the officer's initial reasonable suspicion for requesting the PBT disappeared as a matter of law once Edgar successfully completed the three field sobriety tests. But that is not our caselaw. Reasonable suspicion must be determined in each case on the basis of the totality of the circumstances as viewed by a reasonable law enforcement officer. *Pollman,* 286 Kan. at 890. And in this case Edgar still exhibited symptoms of intoxication because the officer detected the odor of alcohol and Edgar admitted to drinking, initially displayed confusion, and had made minor missteps during the walk-and-turn test.

The problem is that the district court reasoned that under the statute governing administration of the PBT it did not need to consider the field sobriety test results when evaluating the totality

of circumstances. The district court held that "if the officer had a reasonable articulable suspicion to do field sobriety tests, . . . the officer would have that suspicion to run a gamut of tests to divine whether that reasonable articulable suspicion had any basis to support, or not support[,] probable cause to arrest." Those tests, it held, would include the PBT.

The Court of Appeals panel disagreed and declared that a "driver's performance on field sobriety tests may be considered along with all the other evidence available to the officer" to determine whether the officer had a reasonable suspicion to request a PBT under the totality of the circumstances. 45 Kan. App. 2d at 347. We agree with the panel.

As we held in *Pollman*, the "whole picture" must be taken into account when evaluating whether there is reasonable suspicion for requesting a PBT. 286 Kan. at 890. And just as law enforcement uses field sobriety tests and PBTs in an incremental process for evaluating whether there are "reasonable grounds" for evidentiary testing under K.S.A. 2010 Supp. 8-1001, or as probable cause for an arrest, evidence gathered in that same process that might point in the opposite direction must be analyzed as well. To conclude, as the district court did, that it need not consider the field sobriety test results in determining whether the officer had reasonable suspicion to request a PBT misinterprets our caselaw and the statute. That statute specifically requires reasonable suspicion when requesting a PBT. The quantity and quality of all information available to the officer that leads up to that PBT request comprises the "whole picture" described in *Pollman*, 286 Kan. at 890.

Certainly, as the State argues, there is no requirement that other field sobriety testing must precede a PBT. And there is no language in K.S.A. 2010 Supp. 8-1012 that an officer may only ask for a PBT after the driver has performed field sobriety tests. But neither argument answers the question posed on appeal.

We are asked simply whether the results from Edgar's three successful field sobriety tests should have been considered in deciding whether reasonable suspicion existed to request the PBT. The answer to that question is yes. And while the Court of Appeals continued the analysis to consider whether there was reasonable

suspicion in light of the field sobriety test results in Edgar's case, we need not address that question, which may be a close call at best, given our holding on the next issue.

*Proper Notice under K.S.A. 2010 Supp. 8-1012(c)*

Edgar's second argument is that when the officer told him he "didn't have a right to refuse [the PBT]," this obvious misstatement of notice under the statute rendered his subsequent consent to the test invalid. Edgar claims that had he not taken the PBT, he would have received the statutorily required traffic infraction but might not have taken the evidentiary blood test. He notes that at the preliminary hearing the officer testified Edgar performed well on the field sobriety tests and would not have arrested him but for the PBT results. This testimony, he contends, necessarily justifies our scrutiny of the statutory notice requirements for PBT administration. We agree.

The PBT given in this case is considered a search and cannot be administered absent an exception to the general rule requiring search warrants. One of those exceptions occurs if the subject provides voluntary, knowing, and intelligent consent. See *State v. Jones*, 279 Kan. 71, 75-76, 106 P.3d 1 (2005) (quoting *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 103 L. Ed. 2d 639 [1989]) (" 'Subjecting a person to a breathalyzer test, which generally requires the production of alveolar or "deep lung" breath for chemical analysis . . . implicates similar concerns about bodily integrity and, like the blood-alcohol test . . . [citation omitted], should also be deemed a search.' "). PBT results are used to help law enforcement officers determine whether they should arrest someone for DUI and whether to request additional testing under K.S.A. 2010 Supp. 8-1001 once the person is in custody. The officer can arrest someone in whole or in part based on PBT results. K.S.A. 2010 Supp. 8-1012(d).

But before a PBT may be administered, an officer is required first to provide oral notice to the subject that: (1) there is no right to consult with an attorney regarding whether to submit to testing; (2) refusal to submit to testing is a traffic infraction; and (3) further testing may be required after the preliminary screening test. K.S.A.

2010 Supp. 8-1012(c). The statute also states that failure to give this notice shall not be an issue or defense in any action. K.S.A. 2010 Supp. 8-1012(c). Edgar's argument is that the officer incorrectly told him he did not have a right to refuse the test, thus invalidating any consent for the deep air sample that followed.

The district court agreed the officer provided incorrect notice to Edgar, which is obvious. But despite this, the district court held the incorrect warning did not warrant suppression based on a Court of Appeals decision, *Prewett v. Kansas Dept. of Revenue*, No. 90,950, 2004 WL 1041355, at *2 (Kan. App. 2004) (unpublished opinion), which held that consent was not invalidated when an officer told the driver that not taking the test would be a traffic infraction and then added that he "had no constitutional right to refuse the test." In Edgar's case, the district court held the officer's warning did not invalidate consent, but that it "was a darn close question."

The Court of Appeals agreed with the district court and rejected Edgar's claim by finding that his consent was implied under K.S.A. 2010 Supp. 8-1012(a), which states that any person who operates or attempts to operate a vehicle consents to submit to a PBT. *Edgar*, 45 Kan. App. 2d at 348 (citing K.S.A. 2010 Supp. 8-1012[a]). And like the district court's finding, the panel also held the statute precluded Edgar from challenging the officer's incorrect notice. 45 Kan. App. 2d at 350-51 (citing K.S.A. 2010 Supp. 8-1012[c]).

But the PBT statute provides that a driver's refusal to take the test is a traffic infraction, which means that refusal is always an option for the driver. See K.S.A. 2010 Supp. 8-1012(d). And as for the statutory language providing that all drivers consent to a PBT, it is well established that consent to search may be withdrawn in other contexts when warrantless Fourth Amendment searches are premised on that consent. See *United States v. Ortiz*, 669 F.3d 439, 445 (4th Cir. 2012) (any consent to search is valid until it is withdrawn); *United States v. Carter*, 985 F.2d 1095, 1097 (D.C. Cir. 1993) (the right to withdraw consent to search is a constitutional right). The same is true here. So even though Edgar impliedly consented to the PBT under the terms of the statute by driving, such consent may always be withdrawn—an event made

unlikely when a driver is affirmatively misinformed by a law enforcement officer that he or she cannot refuse, which effectively contradicts the statute.

The State argues there is a seeming inconsistency within the statute because subsection (a) states that any driver consents, yet subsection (c) states that a person must be informed that he or she cannot consult an attorney about whether to take the test. This, the State contends, alerted Edgar that he had a right to refuse, even though Edgar was specifically told otherwise by the officer. But the State's point is countered by our caselaw, which holds that an officer cannot provide wholly incorrect information.

The benchmark for statutory notice is whether an officer "substantially complied" with the statutory language. See *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 755 P.2d 1337 (2008). In *Barnhart*, this court discussed notice under K.S.A. 1985 Supp. 8-1001. And although that statute is not directly relevant to this case, the court made a blanket statement regarding statutory notice generally:

"As with any notice required by statute, the provisions of K.S.A. 1985 Supp. 8-1001(f) need not be given in the exact words of the statute. While using the statutory language would have negated the issue now before us, *it is generally recognized that substantial compliance with statutory notice provisions will usually be sufficient. To substantially comply with the requirements of the statute, a notice must be sufficient to advise the party to whom it is directed of the essentials of the statute.*" (Emphasis added.) 243 Kan. at 213.

See also *Meigs v. Kansas Dept. of Revenue*, 251 Kan. 677, 680-81, 840 P.2d 448 (1992) (adopting "substantially complied" language to find officer's notice sufficient even though it provided incorrect term of suspension upon test refusal). An officer may deviate from the statutory language so long as the gist of the statute is conveyed. But, here, the officer did not just deviate—he made misstatements expressly contrary to K.S.A. 2010 Supp. 8-1012.

This precise issue has not been addressed by this court. The Court of Appeals appears to have conflicting decisions from different panels. Compare *Prewett*, 2004 WL 1041355, at *2, with *City of Lenexa v. Gross*, No. 96,367, 2007 WL 2043580, at *3-4 (Kan. App. 2007) (unpublished opinion) (officer's statement that

the driver was required by law to take the PBT did not constitute a request and the driver was coerced into taking the test.).

Other states have struck breath tests for incorrect notice. See, e.g., *Cunningham v. State*, 150 Idaho 687, 693, 249 P.3d 880 (2011) (information provided repeatedly to driver that he would automatically lose his license upon refusal did not comport with statute and defeated purpose of advisory); *State v. Serrano*, 894 S.W.2d 74, 75-76 (Tex. App. 1995) (warning intoxicated drivers of consequences not provided by statute could easily coerce suspects into submission to breath tests); *State v. Sells*, 798 S.W.2d 865, 866-67 (Tex. App. 1990) (driver's consent not voluntary if induced by officer's misstatement of consequences flowing from refusal); *cf.*, *Ewerokeh v. State*, 835 S.W.2d 796, 797 (Tex. App. 1992) (consent not invalidated where no evidence suspect relied on incorrect notice to submit to breath test).

The State claims the officer's omission of the exact wording of K.S.A. 2010 Supp. 8-1012(c)'s statutory notice does not give rise to a defense under the statute. But as the district court noted, the statute concerns the failure to give notice—not failing to provide the *correct* notice. Edgar also points out that the Court of Appeals inserted the word "proper" in the statute when it read the statute as "clearly and unambiguously" providing that "a law enforcement officer's failure to giver *proper* notice shall not be an issue or defense in any action." (Emphasis added.) *Edgar*, 45 Kan. App. 2d at 351. Edgar argues that in doing so the Court of Appeals misinterpreted the PBT implied consent statute to say that providing incorrect notice is the same as providing no notice at all. Edgar is correct. The Court of Appeals misstated the statute and then premised its holding based upon that misstatement.

The statute states that failure to give notice shall not be a defense in any action. K.S.A. 2010 Supp. 8-1012(c). But here there is no failure to inform. The officer explicitly misstated the law. Accordingly, the panel was incorrect to rely on this language that excuses only the failure to inform because outright failure is not at issue in this case. Incorrect notice does not equate to failure in this instance.

We hold that the officer's misstatement that Edgar had no right to refuse the PBT rendered the test involuntary. K.S.A. 2010 Supp. 8-1012(b) provides that a law enforcement officer "may request" a PBT, but not that such a test may be coerced. Telling Edgar he had no right to refuse the test transformed the test into an involuntary search by depriving Edgar of the opportunity to revoke his statutorily implied consent—an opportunity expressly contemplated by K.S.A. 2010 Supp. 8-1012(c)(2), (d). Based on the officer's misinformation, Edgar would understand he had no choice but to submit to the PBT.

Accordingly, the district court erred by not suppressing the PBT results. And that error also invalidates Edgar's DUI arrest and the subsequent blood-alcohol test. See *Shrader v. Kansas Dept. of Revenue*, 296 Kan. 3, Syl. ¶¶ 4-5, 290 P.3d 549 (2012) (ability of officer to request breath test depends on whether there was an alcohol-related arrest); *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, Syl. ¶¶ 3-6, 290 P.3d 555 (2012) (request to take evidentiary breath test relies on a valid arrest based on probable cause). As the district judge conceded:

"I think everyone pretty much agrees if the PBT does not come in you'd have no bad driving. You'd have an odor of alcohol. You'd have [a] statement that he had consumed alcohol. Three passed field sobriety tests, which I think most would agree would not support probable cause to place him under arrest, to ask him to take the blood alcohol test, which he eventually did take."

This acknowledgment is supported by the officer's testimony at the preliminary hearing in which he agreed that without the PBT results Edgar "probably would not have been arrested on DUI."

Edgar's motion to suppress should have been granted. The judgment of the Court of Appeals is affirmed in part and reversed in part on the issues subject to our review. The judgment of the district court is reversed, and the case is remanded to the district court.