No. 118,830

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES RICHARD FISHER III,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

SYLLABUS BY THE COURT

1.

An officer substantially complies with K.S.A. 2016 Supp. 8-1001(k) when the officer reads an implied consent advisory to the driver that omits the items listed in subsections (k)(2) ("the opportunity to consent to or refuse a test is not a constitutional right") and (k)(4) (if the driver refuses the test, the officer may charge the driver with a separate crime for refusal).

2.

The choice of the word "requires" in K.S.A. 2016 Supp. 8-1001(k)(1) is not unduly coercive. When the implied consent advisory is read in context, a reasonable person would understand that he or she retains the right to refuse testing.

Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed July 17, 2020. Affirmed.

*Sally G. Kelsey*, of The Law Office of Sally G. Kelsey, of Lawrence, for appellant.

*Joanna Labastida*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

1

Before ARNOLD-BURGER, C.J., WARNER, J., and LAHEY, S.J.

ARNOLD-BURGER, C.J.:  Officer Tracy Russell observed James Richard Fisher III speeding through Lawrence, Kansas. Russell followed Fisher and saw him pull into a driveway. Russell saw Fisher stumble as he exited the vehicle. Fisher had bloodshot eyes, slurred his words, and smelled of alcohol. Russell arrested Fisher and provided him with the implied consent advisories found in the DC-70 form.

Fisher declined to take a blood or breath test without an attorney present. Russell then applied for, and received, a search warrant to draw Fisher's blood. A blood draw occurred which indicated that Fisher was driving while under the influence of alcohol. Fisher's driver's license was suspended. The suspension was affirmed by the Kansas Department of Revenue. Fisher appealed to the district court. The district court also affirmed the suspension. Fisher appeals to this court. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On an early November 2016 morning, Russell saw Fisher drive through a red light in Lawrence, Kansas. Russell estimated that Fisher was driving around 60 to 70 miles per hour. In order to follow Fisher, Russell briefly drove the wrong way down a one-way street. Russell followed the vehicle and saw it pull into a driveway.

Russell saw Fisher step out of the vehicle. According to Russell, Fisher stumbled as he did so. Fisher then looked towards the ground at the trunk of his car and placed his hands on the trunk. Russell asked for Fisher's driver's license and Fisher responded, "'A lawyer.'" Russell indicated that he understood that Fisher was exercising his right to not answer questions without an attorney present.

2

Russell asked Fisher to perform standardized field sobriety tests. Once again, Fisher replied by saying, "'Lawyer.'" Russell said that he believed Fisher was intoxicated because Fisher: stumbled, smelled like alcohol, had bloodshot eyes, and had slurred speech. Russell acknowledged that a person might exhibit those indicators for reasons other than being intoxicated. After Fisher declined to perform the field sobriety tests, Russell placed him under arrest.

Russell took Fisher to a local hospital and provided him with the implied consent advisories, through the use of the DC-70 form with a revised date of February 2016. Russell asked Fisher if he would take a blood or breath alcohol content test. Fisher declined to take a test without an attorney present. Russell then applied for, and received, a search warrant for a blood draw. Russell said that he provided Fisher with a completed DC-27 form, which notified Fisher that his driver's license would be suspended.

The Kansas Department of Revenue held a hearing and affirmed the suspension of Fisher's driver's license. Fisher petitioned for review with the district court and a trial de novo was held. At the de novo trial, Fisher offered the police recording of the stop into evidence.

The district court affirmed the suspension, holding that there was probable cause to arrest Fisher and that reasonable grounds existed to request testing. Fisher timely appealed.

ANALYSIS

Fisher raises two issues on appeal. First, he argues that Russell did not have probable cause to arrest him, nor did he have reasonable grounds to request that he submit to a blood or breath test. Second, he argues that the implied consent advisories

3

required by statute were not given and that any evidence obtained after the modified advisories were given should not be considered by the court.

*Officer Russell had reasonable grounds to request blood or breath testing, and probable cause, to arrest Fisher.*

Fisher first argues that Russell did not have probable cause or reasonable grounds to arrest Fisher or to request that he take a blood or breath test. The district court held he had both. We agree.

We review a district court's factual findings in a license suspension matter for substantial competent evidence. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 469, 447 P.3d 959 (2019). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019). We do "not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." *Creecy*, 310 Kan. at 469. Fisher bears the burden to show that the suspension should be set aside. See K.S.A. 2016 Supp. 8-1020(q).

Kansas courts determine whether reasonable grounds existed to believe the person was operating a vehicle while under the influence of alcohol by looking to probable cause standards. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). "'Probable cause is determined by evaluating the totality of the circumstances,' giving consideration to 'the information and fair inferences therefrom, known to the officer at the time of arrest,' with 'no rigid application of factors.'" *Swank*, 294 Kan. at 881 (quoting *Allen v. Kansas Dept. of Revenue*, 292 Kan. 653, 656-57, 256 P.3d 845 [2011]).

Fisher relies on the Kansas Supreme Court's holding in *City of Wichita v. Molitor*, 301 Kan. 251, 341 P.3d 1275 (2015), to support his argument that Russell did not have

4

reasonable grounds or probable cause in this case. In *Molitor*, the court held the officer did not have reasonable suspicion to request a preliminary breath test because Molitor spoke without slurring his words, produced his identifying documents without difficulty, exited and walked away from his vehicle without losing his balance, and passed two field sobriety tests. 301 Kan. at 268-69.

The officer noticed that Molitor had watery and bloodshot eyes, a strong odor of alcohol emanated from his vehicle, and that he ran into a curb without stopping his vehicle. The court held, however, that under the totality of the circumstances, one could not reasonably suspect that Molitor was impaired to the point of being under the influence of alcohol. 301 Kan. at 268.

The situation in this case is different. Russell observed Fisher speed through a red light in Lawrence. Russell thought Fisher was driving around 60 to 70 miles per hour. Fisher stumbled when exiting his vehicle, had slurred speech, bloodshot eyes, and smelled like alcohol. The district court found Russell's observations credible, noting that there was a "very strong odor of alcohol," that Fisher stumbled when he exited the vehicle, and had "slurred speech, and . . . bloodshot eyes."

Under the totality of the circumstances, we find that there was substantial competent evidence for the court to conclude that Russell had reasonable grounds to believe Fisher was operating a vehicle while under the influence of alcohol. Russell saw Fisher driving at high speeds through Lawrence early in the morning. Fisher ran a red light. After stopping Fisher, Russell saw him stumble as he exited his vehicle. Fisher's speech was slurred, he smelled of alcohol, and he had bloodshot eyes. Each of these factors could lead to Russell determining there was reasonable grounds, or probable cause, to believe that Fisher was driving while intoxicated. See *Campbell v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 430, 431-32, 962 P.2d 1150 (1998) (considering driver's

speed, the early morning hour, smell of alcohol, and bloodshot eyes when determining probable cause existed).

Fisher argues that there could be other reasons that he exhibited the indications of being under the influence of alcohol. For example, he notes that Officer Russell did not know whether Fisher was wearing contacts which could have contributed to bloodshot eyes. Fisher's arguments are essentially asking this court to reweigh the evidence, which this court will not do. The district court considered the evidence and found that Russell had reasonable grounds, or probable cause, to arrest Fisher and request a blood or breath test. Fisher does not meet his burden to show that the district court's decision was erroneous.

*The court did not err in denying Fisher's request to disregard the test results.*

For his second issue, Fisher asserts that the blood test results should have been disregarded for two reasons, both related to what he believes to be a faulty implied consent notice. First, while he does not dispute that the officer gave him the implied consent advisories, the implied consent notices required by statute reference provisions which the Kansas Supreme Court has held were unconstitutional. Fisher argues that Russell did not comply with the statutory notice provisions because he provided Fisher with a modified implied consent notice that excluded the unconstitutional provisions. Second, he argues that the language in the implied consent notice he was given is unduly coercive because it says that the driver is "'require[d]'" to submit to testing.

To determine whether Fisher is right, we must examine the implied consent statute and its requirements. Statutory interpretation presents a question of law over which appellate courts have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

6

Under the version of the statute in effect at the time of Fisher's arrest, K.S.A. 2016 Supp. 8-1001(a), "[a]ny person who operates or attempts to operate a vehicle within this state is deemed to have given consent, subject to the provisions of this article, to submit to one or more tests of the person's blood [or] breath." But before a test or tests is administered, "the person shall be given oral and written notice" of nine provisions listed by the statute. K.S.A. 2016 Supp. 8-1001(k). Those provisions, known as the implied consent advisories, included a statement that there is not a constitutional right to refuse the test and that refusing to submit to the test could result in the individual facing a separate criminal charge. K.S.A. 2016 Supp. 8-1001(k)(2), (4).

However, the Kansas Supreme Court held that a driver has a constitutional right to refuse to submit to the requested test, undermining the validity of K.S.A. 2016 Supp. 8-1001(k)(2). See *State v. Ryce*, 303 Kan. 899, 944, 368 P.3d 342 (2016) (*Ryce I*), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*).

As for the notice that the individual could face separate criminal charges for refusing to submit to a test, K.S.A. 2016 Supp. 8-1001(k)(4) was a reference to K.S.A. 2016 Supp. 8-1025 which criminalized a person's refusal to submit to testing. In *Ryce I*, 303 Kan. at 963, the Kansas Supreme Court held K.S.A. 2014 Supp. 8-1025 was unconstitutional "because it allows the State to criminally punish those who refuse a search that is *not* grounded in the Fourth Amendment."

Subsequently, the Kansas Supreme Court held that providing the notice in K.S.A. 2014 Supp. 8-1001(k)(4) to an individual was "inaccurate and cannot serve as the basis for voluntary consent." *State v. Nece*, 303 Kan. 888, Syl. ¶ 1, 367 P.3d 1260 (2016) (*Nece I*), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*).

Based on the holdings in *Ryce* and *Nece*, law enforcement began providing revised implied consent advisories to suspected intoxicated drivers. The form in this case, the

7

DC-70, with a revision date of February 2016, does not inform the individual that he or she does not have a constitutional right to refuse to submit to the test, nor does it inform the individual that he or she can be subject to criminal charges for refusing to submit to the breath test. Fisher argues that law enforcement did not provide the statutorily required notices and, in fact, could not constitutionally do so—therefore requiring the court to disregard the test results.

This issue has been addressed several times by this court, with each panel determining that a law enforcement officer was not required to strictly adhere to the statutory notice provisions under the circumstances. See *Leivian v. Kansas Dept. of Revenue*, No. 119,249, 2019 WL 166541, at *4 (Kan. App. 2019) (unpublished opinion); *Ackerman v. Kansas Dept. of Revenue*, No. 118,128, 2018 WL 3673168, at *2-3 (Kan. App. 2018) (unpublished opinion), *rev. denied* 310 Kan. 1061 (2019); *State v. Barta*, No. 117,990, 2018 WL 1883878, at *5 (Kan. App. 2018) (unpublished opinion); *Bynum v. Kansas Dept. of Revenue*, No. 117,874, 2018 WL 2451808, at *3 (Kan. App. 2018) (unpublished opinion); *White v. Kansas Dept. of Revenue*, No. 117,956, 2018 WL 1769396, at *6 (Kan. App. 2018) (unpublished opinion). Although not bound by these decisions, we agree with the analysis provided by our colleagues. See *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018) (one Kansas Court of Appeals panel is not bound by another panel's decision).

Generally speaking, an arresting officer is required to substantially comply with the statutory notice provisions in K.S.A. 2016 Supp 8-1001. "To substantially comply with the requirements of the statute, a notice must be sufficient to advise the party to whom it is directed of the essentials of the statute." *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 (1988).

"The purpose of the implied consent advisory is to inform a driver of the law regarding submission to a requested test and the potential consequences arising from a

8

test failure or test refusal. If the information provided by statute is unconstitutional and unenforceable, the purpose of the implied consent is subverted if the arresting officer provides a driver with notice of those unconstitutional and unenforceable provisions." *Leivian*, 2019 WL 166541, at *5.

Because those provisions—advising a driver that there was no a constitutional right to refuse the test and that refusing to submit to the test could result in the individual facing a separate criminal charge—are unconstitutional and unenforceable, they are no longer essential to the statute. An officer substantially complies with the statutory scheme by adhering to the most recent changes in the law, whether that change is strictly reflected in the statute or not. Therefore, law enforcement in this case substantially complied with the statute by providing the implied consent notices from the revised DC-70. This conclusion is also bolstered by the Legislature's clear intent that "if any clause, paragraph, subsection or section of this act shall be held invalid or unconstitutional, it shall be conclusively presumed that the legislature would have enacted the remainder of this act without such invalid or unconstitutional clause, paragraph, subsection or section." K.S.A. 8-1007.

As a separate defect in the notice, Fisher argues that the first statement of the 2016 implied consent advisories—which states that "Kansas law requires the person to submit to and complete" any requested test—is a misstatement of the law and unduly coercive, resulting in an unconstitutional search. See K.S.A. 2016 Supp. 8-1001(k)(1). We are not asked to determine whether a warning given under K.S.A. 2016 Supp. 8-1001(k)(1) substantially complies with the statute, because it explicitly complies with the statute. Instead, we are asked to determine whether the advisory is unduly coercive. To support his argument, he refers us to *State v. Edgar*, 296 Kan. 513, 294 P.3d 251 (2013). In *Edgar*, 296 Kan. 513, Syl. ¶ 5, the Supreme Court found it unduly coercive for the officer to improperly advise Edgar that he had no right to refuse a preliminary breath test (PBT). Edgar consented to the PBT but argued that the officer coerced him by saying he had no

9

right to refuse. Accordingly, his consent was not voluntary, and the test results were required to be suppressed. 296 Kan. at 530.

But the provisions of K.S.A. 2016 Supp. 8-1001(k) provide significantly more information than the PBT advisories the Supreme Court found insufficient in *Edgar*, 296 Kan. 513, Syl. ¶¶ 4-5. It is the additional provisions that further explain a driver's rights, including the consequences of refusal, and render *Edgar* inapplicable to these facts. So next we turn to the language of K.S.A. 2016 Supp. 8-1001(k).

First, we agree that under the plain language of the statute, advising a driver he or she is required to submit to and complete a requested test is a misstatement of the law. See *Ryce II*, 306 Kan. at 695 ("Significantly, while the statutory implied consent advisory informs the driver he or she is required to take a blood alcohol content test or face consequences, . . . an officer can only 'request' that a driver submit to a test."). Although a driver is "deemed to have consented," the driver is not required to consent. See K.S.A. 2016 Supp. 8-1001(a) ("Any person who operates or attempts to operate a vehicle within this state is deemed to have given consent, subject to the provisions of this article," to submit to a breath, blood, or urine test.). But just as the statute provides that the driver is deemed to have given consent, that consent is "subject to the provisions" of the statute. K.S.A. 2016 Supp. 8-1001(a). And the implied consent advisory goes on to discuss the consequences of refusal of an officer's test "request." K.S.A. 2016 Supp. 8-1001(k)(4), (5), (7).

In interpreting K.S.A. 2016 Supp. 8-1001(k)(1), rather than isolating a particular provision, we must examine the statutory scheme, considering "various provisions of an act in pari materia with a view to reconciling and bringing the provisions into workable harmony, if possible." *State v. Coman*, 294 Kan. 84, 93, 273 P.3d 701 (2012); *State v. Cole*, 238 Kan. 370, Syl. ¶ 1, 710 P.2d 25 (1985) ("To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent,

10

harmonious and sensible."). "[W]ords are given meaning by their context." Scalia and Garner, Reading Law: The Interpretation of Legal Texts, p. 56 (2012). Accordingly, K.S.A. 2016 Supp. 8-1001(k)(1) should not be read in isolation. The other provisions of K.S.A. 2016 Supp. 8-1001 and the resultant DC-70 form make it clear that testing is voluntary. In fact, the meaning of "requires" is limited by paragraphs 3 and 8 of the DC-70: "If you refuse" your driving privileges will be suspended and "[r]efusal to submit to testing" may be used against you at trial. See K.S.A. 2016 Supp. 8-1001(k)(5), (7). And most telling is the last provision, "Will you take a [breath, blood, or urine] test?" These provisions, when read together, clarify that a person may refuse the test, but there are consequences to that refusal.

The statute consistently directs law enforcement officers to "request a person to submit to a test." See K.S.A. 2016 Supp. 8-1001(b), (c), (h), (i), (m). Likewise, officers must give the implied consent advisories—disregarding the provisions invalidated as unconstitutional, as discussed—which reference the driver's ability to refuse testing and potential consequences of test refusal or failure. See K.S.A. 2016 Supp. 8-1001(k)(5)-(9). Reading these provisions as a whole, the choice of the word "requires" in subsection (k)(1) is not unduly coercive. When read in context, a reasonable person would understand that he or she retains the right to refuse testing. In fact, the DC-70 explicitly gives the driver a choice at its conclusion whether to refuse testing.

Moreover, Fisher's actions bolster this interpretation. The language did not coerce Fisher into taking the blood test. He refused the test. He clearly understood the language to mean he could refuse. This is not a case like *Meigs v. Kansas Dept. of Revenue*, 251 Kan. 677, 840 P.2d 448 (1992), where we have to determine whether the officer "substantially complied" with a legislative mandate. He did. He read the language to Fisher as it appears in the statute. So the *Meigs* holding that no prejudice need be shown when the notice does not substantially comply with the statute, is inapplicable here. See 251 Kan. 677, Syl. ¶ 4. There was not only substantial compliance, there was strict

11

compliance with the statute. And, we cannot find unconstitutional coercion, when there was no coercion. In other words, the language was not so coercive as to convince Fisher to take the test. The officer was required by statute to provide the implied consent advisories. He did. Fisher refused the requested test. That was all that was necessary to suspend his driver's license. His license was properly suspended for refusing the test.

Affirmed.